957 So.2d 1280 (2007)
STATE of Louisiana
v.
Wayne MACON.
No. 06-K-481.
Supreme Court of Louisiana.
June 1, 2007.
*1282 Charles C. Foti, Jr., Atty. Gen., Eddie J. Jordan, Jr., Dist. Atty., and Battle Bell, IV, Asst. Dist. Atty., for applicant.
Rudy Willie Gorrell, Jr., for respondent.
JOHNSON, Justice.
We granted this writ application to review the correctness of the court of appeal's decision, which upheld the judgment of the trial court vacating defendant's conviction for unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4, and granting him a new trial. The trial court reasoned that the State had failed to produce the "true" victim, not the owner of the vehicle at the time it was stolen, as the State alleged in the bill of information, but, rather, the insurance company, which had apparently settled with the owner of the vehicle in the year and a half that intervened between the theft of her vehicle and its recovery by New Orleans police officers.
For the following reasons, we reverse the decision of the court of appeal, and remand this matter to the trial court for sentencing.

FACTUAL AND PROCEDURAL HISTORY
On January 16, 2002, Avilla Kern reported that her blue 1996 Chevrolet Lumina had been stolen. On March 17, 2003, two officers from the New Orleans Police Department stopped a white 1996 Lumina after the vehicle ran a stop sign. The license plate was not visible at the rear of the Lumina. As the officers activated their sirens and lights, the car sped away and, after driving onto the curb, the driver exited the vehicle and fled on foot. Following a foot chase, the officers apprehended defendant, Wayne Macon ("Macon").
Upon inspecting the vehicle, one of the officers noted that the vehicle identification number ("VIN") plate on the dashboard appeared to have been tampered with. He requested the assistance of Sergeant Dan Anderson, who was then a member of the auto theft task force. Sergeant Anderson confirmed that the VIN plate on the Lumina's dash had been tampered with, indicating to him that the vehicle was stolen, and was a "numbers job."
Due to his specialized training, Sergeant Anderson was able to identify the vehicle's true VIN, found in a confidential location on the vehicle. Using the true VIN, the vehicle was later determined to be the one reported stolen by Ms. Kern. The police advised Ms. Kern that her vehicle had been recovered, but she was never required to inspect the vehicle to identify it as her stolen vehicle. Ms. Kern confirmed to the police that she did not give anyone permission to use her vehicle.
After he was apprehended by the officers, Macon admitted that he was aware that the vehicle was "a numbers job," and that he had exchanged two pieces of crack cocaine for use of the car from a person named Troy Lewis. Macon further stated that he had seen the vehicle being driven around for about six months.
Macon was charged with unauthorized use of a motor vehicle, and a jury found him guilty as charged. Macon filed a motion for post-verdict judgment of acquittal on the basis that there was insufficient evidence in the record to support the guilty verdict. Defendant argued that Ms. Kern was never required to identify her *1283 vehicle, and that she was only informed by the police officers that her vehicle was identified by the VIN. Defendant argued that the State did not prove that the vehicle belonged to Ms. Kern, considering that there were two different VINs on the vehicle, and that Ms. Kern's vehicle was blue, while the recovered automobile was white. Defendant further argued that he had "permission of another" to use the vehicle, as he had been given consent/permission from Troy Lewis.
The trial court held a hearing on the motion for post verdict judgment of acquittal. During oral argument, while explaining why Ms. Kern did not identify or retrieve the vehicle after it was recovered, the State informed the court that Ms. Kern had previously settled her claim with her insurance company. At this point, the trial court stated that this information raised a new issue, and because Ms. Kern had settled with her insurance company, she was not the rightful victim, as the insurance company was the owner of the vehicle at the time of the defendant's arrest. The trial court then, sua sponte, converted defendant's motion for acquittal into a motion for new trial. The trial court granted defendant a new trial, stating that ". . . arguably, at the very least, the person who is listed in the bill of information in this case (Ms. Kern) is not the victim. Because, in fact, she simply is not the victim."
The State appealed the trial court's decision, arguing that it was error to convert the motion for acquittal into a motion for new trial, and asserting that the fact that Ms. Kern may have settled with her insurance company would not change the verdict. The defendant answered the appeal, arguing that the trial court should have granted his motion for post verdict judgment of acquittal. The court of appeal, in a 2-1 decision, affirmed the trial court's ruling.[1] The court of appeal noted that there was nothing to prevent the defendant from filing a motion for new trial after the hearing, and thus, it would not be in the interest of judicial economy to grant the State's appeal on that issue and remand the case to allow the defendant to file a subsequent motion for new trial. Thus, the court of appeal went forward to address the substantive issues of the motion for new trial. The court of appeal reasoned that the insurance company was the proper party to identify the vehicle and establish that the defendant was not authorized to use the vehicle. The court of appeal concluded that by not presenting testimony from the owner of the vehicle (i.e. the insurance company), the State failed to establish the unauthorized use of the vehicle. Thus, the court of appeal did not find any abuse of discretion on the part of the trial court in granting the new trial.

DISCUSSION
The issue presented by the State for review is whether the trial court erred in granting a new trial "based on the unsubstantiated finding that the victim had received compensation for her stolen vehicle in an unauthorized use of a motor vehicle case."

New Trial
Article 851 of the Code of Criminal Procedure provides the grounds for a motion for new trial:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:

*1284 (1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;

(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

La. C. Cr. Proc. art. 851 (Emphasis added).
In this case, the trial court presumably based its granting of the new trial on "new and material evidence," La. C. Cr. Proc. art. 851(3), or on La. C. Cr. Proc. art. 851(5), that the ends of justice would be served by the granting of a new trial.[2]
In considering a motion for new trial based on newly discovered evidence, the test is not whether another jury may reach a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Williams, 343 So.2d 1026 (La.1977). We do not find that evidence relating to Ms. Kern's insurance settlement would meet this burden.
Although the trial court apparently relied on information that Ms. Kern had reached a settlement with her insurance company in granting the new trial, there is no evidence in the record indicating that a settlement was reached; nothing indicating the date of the alleged settlement; and nothing indicating that the title of the vehicle was ever actually changed from Ms. Kern to her insurance company. Considering this lack of evidence, there is no proof that the insurance company was the legal owner of the vehicle at the time of the defendant's arrest.
Moreover, we are of the opinion that the true victim in this case is the person who was deprived of the use of the stolen vehicle, Ms. Kern. Whether or not she settled her insurance claim does not change the fact that she was the owner of the car when it was reported stolen. The question of whether Ms. Kern settled her insurance claim is of no legal consequence in this case, and does not change the "victim" for purposes of determining whether the defendant was guilty of unauthorized use of a motor vehicle.
Furthermore, information that Ms. Kern had allegedly settled with her insurance company was not a fact previously unknown to the defendant before or during the trial of this matter. In general, "newly discovered evidence" must be of a nature that it was not known to the defendant, nor discoverable by reasonable diligence, before the verdict. State v. Motton, 395 So.2d 1337 (La.1981); State v. Rossi, 273 So.2d 265 (La.1973). At the trial of this matter, defense counsel specifically asked Ms. Kern whether she had *1285 settled with her insurance company, however the trial judge sustained the state's objection to relevance.[3] Although Ms. Kern was not allowed to answer the question, the question itself reveals that the defendant was aware that Ms. Kern may have settled her insurance claim, or, at the very least, that the defendant was aware of this issue. Thus, the issue of Ms. Kern's insurance settlement is not "newly discovered" evidence such that would justify a new trial.
The trial court is accorded much discretion in evaluating the impact of newly discovered evidence on the verdict, and thus, the ruling on a motion for new trial based on newly discovered evidence will only be disturbed on appeal where there is an abuse of discretion. State v. Brown, 338 So.2d 686 (La.1976). For the above reasons, we find that the trial court abused its discretion in granting the defendant a new trial based on newly discovered evidence.
In reviewing a trial court's granting of a new trial pursuant to La. C. Cr. Proc. art. 851(5), we note that under most circumstances, district court judgments on motions for new trial to serve the ends of justice are not subject to review by appellate courts because they present nothing for review.[4] However, in this case we find that the trial court's sua sponte decision to convert the defendant's motion for post-verdict judgment of acquittal into a motion for new trial, then grant a new trial based on a finding that the State had failed to present sufficient evidence to prove the crime with which defendant was charged, constituted legal error that must be reversed.[5]

Sufficiency of the Evidence
In ruling that a new trial was warranted because the State failed to establish the unauthorized use of the vehicle, the lower courts held, as a matter of law, that the State's evidence was insufficient to support the defendant's conviction. If the evidence was, in fact, insufficient to support Macon's conviction, then he was entitled to a judgment of acquittal, and it was legal error to grant a new trial.[6]
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the Jackson standard of review. State v. *1286 Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. Id.
La. R.S. 14:68.4 provides, in pertinent part:
A. Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently. (Emphasis added).
The statute does not specifically require the titled owner of the vehicle to testify and/or identify the vehicle. We hold that the State can meet its burden of proof by proving that the defendant was aware that he was driving a stolen vehicle, as we can presume that there can be no legitimate permission given to drive a stolen vehicle.
At trial, the State presented the testimony of Ms. Kern, Detective Mitch Weatherly, and Sergeant Dan Anderson. Ms. Kern testified that she owned a blue, 1996 Lumina, which was stolen on January 16, 2002. Approximately a year and a half later, she was advised by police that they had found and identified her vehicle by the VIN. She further testified that she did not know the defendant, nor did she know Troy Lewis, and that she had never given either man permission to use her vehicle.
Detective Weatherly testified that on March 17, 2003, he and his partner, Detective Varnado, observed a white vehicle run a stop sign, and, after getting behind the vehicle, he observed that the license plate was not visible. He testified that when they activated their lights, the white vehicle sped up and came to an abrupt stop on the curb. The driver then exited the vehicle and began running. Detective Weatherly chased the driver, and eventually caught him and took him into custody. The driver was identified as defendant, Wayne Macon. After returning to the vehicle, Detective Weatherly testified that he began his inspection, and noticed that the VIN plate appeared to be raised off of the dashboard, and that one of the rivets was not secured. Upon further inspection, he noted that the rivets had been glued onto the VIN plate, and that the VIN plate had been glued onto the dashboard. Detective Weatherly was unable to locate the true VIN, thus he contacted Sergeant Dan Anderson and asked him to come to the scene. He testified that Sergeant Anderson was able to locate the true VIN, and that the vehicle was later identified as belonging to Ms. Kern.
Detective Weatherly further testified that the defendant stated that he had exchanged two pieces of crack cocaine for the use of the vehicle from Troy Lewis. Defendant admitted that he was aware that the vehicle was "a numbers job," and that he had seen the vehicle being driven around for the last six months. Detective Weatherly testified that a "numbers job" indicates a stolen vehicle, whose true VIN plate is replaced by a faulty VIN plate. He further testified that the color of the car is often changed to match the identity with the faulty VIN.
Sergeant Anderson testified that on March 17, 2003, he was a member of the citywide auto theft task force, and had been contacted by Detectives Weatherly and Varnado relative to a vehicle that appeared to have an altered VIN. Sergeant Anderson testified that the VIN plate recovered from the Lumina's dashboard had been tampered with, and he stated that it was a "numbers job." He explained that a "numbers job" is when a person removes the VIN plate from a salvage car, steals a car of a similar make and model, cuts the VIN plate off of the stolen car, and replaces *1287 it with the VIN plate of the salvage car. Sergeant Anderson also testified that there are additional, confidential numbers within a vehicle, indicating the vehicle's true VIN, which can be located by a specialized officer. He was able to locate this confidential number ("true VIN") on the Lumina, and later determined that the vehicle had been reported stolen.
The use of VINs is an integral part of the regulation of motor vehicles at the federal and state levels, and VIN data is presumptively reliable in identifying vehicles. The VIN consists of seventeen characters, unique to each vehicle and required on all cars and trucks. See 49 CFR § 565.4.
In New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), the Court discussed the importance of VINs in regulating vehicles:
The VIN is roughly analogous to a serial number, but it can be deciphered to reveal not only the place of the automobile in the manufacturer's production run, but also the make, model, engine type, and place of manufacture of the vehicle. The VIN is a significant thread in the web of regulation of the automobile. See generally 43 Fed.Reg. 2189 (1978). The ease with which the VIN allows identification of a particular vehicle assists the various levels of government in many ways.
New York, 475 U.S. at 111, 106 S.Ct. at 964.
We are not persuaded by defendant's argument that because there were two VINs found on the car (the VIN on the dash plate, and the VIN found in the confidential location), that there is a possibility that the confidential VIN could have come from another vehicle. The use of confidential VINs has long been used and relied upon by courts around the nation to identify stolen vehicles.[7] Thus, considering the reliability of VIN data, and the testimony of Sergeant Anderson, and Detective Weatherly, we find that the State sufficiently proved that the vehicle in question was the same vehicle reported stolen by Ms. Kern.
Furthermore, considering all of the evidence in a light most favorable to the State, we find that the jury reasonably found the defendant guilty of unauthorized use of a motor vehicle. The evidence and testimony reflect that Macon was stopped by police while driving a vehicle which he did not own. An investigation revealed that the VIN on the dashboard of the vehicle had been tampered with. Further investigation uncovered the true VIN (located in a confidential area of the vehicle), and identified the vehicle as belonging to Ms. Kern, who had reported the vehicle stolen the previous year. The defendant admitted that he was aware that the vehicle was a "numbers job" and that he had seen the vehicle being driven around for about six months. Defendant also admitted to the police that he had traded crack cocaine for use of the car from Troy Lewis. Moreover, defendant displayed guilty behavior by fleeing the vehicle when it was stopped by the police.
*1288 The Fourth Circuit considered a defendant's knowledge that he was driving a stolen vehicle in State v. Jefferson, 1997-2949 (La.App. 4th Cir.4/21/99), 735 So.2d 769, and affirmed the defendant's conviction for unauthorized use of a motor vehicle. In Jefferson, the police stopped a vehicle with three occupants. A rental agreement was found in the glove compartment, although none of the occupants' names was on the rental agreement or on any of the documentation found in the vehicle. The officer noted that the steering wheel was intact, and that the occupants had the ignition key. The defendant driver advised police that she had borrowed the vehicle from a woman who lived in New Orleans East, but that she only knew the woman's first name. After running the license plate number, the officer learned that the vehicle was stolen. The vehicle belonged to Budget Rent-A-Car and had been rented to a third person, but not returned. The defendant argued that the State did not produce sufficient evidence to show that she intentionally took or used a motor vehicle that belonged to another person. The defendant argued that there was nothing in the vehicle which would indicate to her that the vehicle was stolen. The court disagreed, noting that the defendant was the person who obtained the vehicle from an unknown person for her own personal use. The court held that the trier of fact could conclude that the defendant's story was suspicious and indicative of criminal knowledge and/or intent. The court also held that the defendant knew, or should have known, that the vehicle did not belong to the woman from whom she allegedly borrowed the vehicle, as the rental agreement was in the vehicle and showed that the car belonged to Budget Rent-A-Car, and was leased to a third person. The court also noted that the state produced evidence to show that the vehicle had, in fact, been stolen.
In this case, considering the evidence of the tampered VINs, defendant's conduct, and his admission to the police that he knew that the vehicle was a "numbers job," we find that Macon knew, or should have known, that he did not have permission from the rightful owner to use the vehicle. Although Macon alleged that he received permission to use the vehicle from Troy Lewis, it is clear, based on the evidence, that Macon knew, or should have known, that Troy Lewis was not the rightful owner who had authority to grant permission to use the vehicle. Thus, we hold that the State has proven that the defendant knew he was driving a stolen vehicle.
We find, based on the evidence in the record, that the State has sufficiently proven the elements of unauthorized use of a motor vehicle.

DECREE
For the above reasons, the ruling of the court of appeal is reversed, and the jury's verdict is reinstated. This matter is remanded to the trial court for sentencing.
TRAYLOR, Justice, concurs in the result.
NOTES
[1] State v. Macon, XXXX-XXXX (La.App. 4th Cir.2/1/06), 925 So.2d 618.
[2] The trial judge stated: "I think based on everything now that has come in this matter, the interest of justice is such that the defendant at the very least ought to have another trial in this case. And so, I am going to grant the defendant a new trial."
[3] We note that the defendant did not lodge an objection to the court's ruling.
[4] State v. Toomer, 395 So.2d 1320, 1328 (1981); State v. Williams, 343 So.2d 1026 (La.1977); State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950); State v. White, 207 La. 695, 21 So.2d 877 (1945).
[5] La. C. Cr. P. art 858: Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial except for error of law.
[6] Because the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only remedy available for that court is the direction of a judgment of acquittal. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Fontana, 396 So.2d 1251 (La.1981).
[7] See: People v. Valoppi, 61 Mich.App. 470, 233 N.W.2d 41 (1975); People v. Solomos, 83 Cal.App.3d 945, 148 Cal.Rptr. 248 (Cal.App. 1978); United States v. Briddle, 430 F.2d 1335 (8th Cir.1970); Gurleski v. United States, 405 F.2d 253 (5th Cir.1968); People v. Gonzales, 728 P.2d 384 (Colo.App.1986); Commonwealth v. Lowry, 385 Pa.Super. 236, 560 A.2d 781 (1989); State v. Slaughter, 451 So.2d 59 (La.App. 4th Cir.1984); State v. Mitchell, 553 So.2d 915 (La.App. 4th Cir.1989); United States v. Tutiven, 40 F.3d 1 (1st Cir.1994) ("All vehicles bear the public VIN and the federal certification VIN; ninety-five percent bear a confidential VIN. The confidential VIN, which is stamped into the metal of the vehicle, is the most difficult to locate and alter.").