PAUL A. BONIN, Judge.
 

 |) Lavester Gilmore was charged by bill of information with distribution of an imitation or counterfeit substance which is represented to be a controlled dangerous substance.
 
 See
 
 La. R.S. 40:964, Schedule II A(4), and 40:971.1 A. He appeals his conviction for attempted distribution of such a substance.
 
 See
 
 La. R.S. 14:27 and La.C.Cr.P. art. 814 A(54). He assigns two errors: the first concerning the legality of the verdict returned by the jury and the second claiming the evidence is legally insufficient for the conviction. Because we conclude that the jury returned a legal verdict and because we determine that a rational trier of fact could be convinced beyond a reasonable doubt of Mr. Gilmore’s guilt, we affirm his conviction.
 
 [1]
 

 I
 

 While surveilling activity in the French Quarter, just after midnight, some undercover or plainclothes New Orleans police officers observed Mr. Gilmore in an exchange with James Salazar. The two men appeared to be checking whether |2they were being observed, so the officers hid behind a nearby SUV to continue their observation undetected by Mr. Gilmore and Mr. Salazar. The officers overheard Mr. Gilmore tell Mr. Salazar to go to a nearby ATM and get money after which he would give “it” to Mr. Salazar. Mr. Salazar then walked to the ATM. Being unsuccessful in using the ATM, Mr. Salazar started screaming and punching the machine. Mr. Gilmore called out to him, telling him to stop doing that, and warning that he would get them arrested.
 

 Mr. Gilmore settled for the money Mr. Salazar already had on him. With his right hand, Mr. Salazar gave Mr. Gilmore what the police later determined to be fourteen dollars. With his left hand, Mr. Gilmore gave Mr. Salazar a small baggie of white powder.
 

 The officers, who were experienced in narcotics matters, believed that they had just witnessed a narcotics transaction. Asked why he believed that, one of the officers explained:
 

 Just because of the package, [sic] was a small package of white powder. It was, you know, wrapped in [sic] little plastic, which is consistent with small bags of either crack cocaine or powdered cocaine.
 

 Another officer had seen, on several occasions in the past, narcotics packaged the same as the white powder in the instant case was packaged.
 

 As it turned out, these experienced officers themselves had been fooled by the appearances of the substance and of the packaging. After the arrests of Mr. Gilmore and Mr. Salazar, the white powder was field tested and the testing revealed that the white powder substance was not a controlled dangerous |ssubstance. Over Mr. Gilmore’s objection, the prosecution introduced into evidence the report of a criminalist, revealing that the white powder tested negative for a controlled dan
 
 *211
 
 gerous substance.
 
 [2]
 
 The officers conceded that at no time did they overhear either Mr. Gilmore or Mr. Salazar utter either the word “cocaine” or a slang word meaning “cocaine.”
 

 Donald Daly, custodian of bank records for Wachovia Bank, identified Mr. Salazar’s ATM withdrawal records, which showed that $400 was withdrawn from the French Quarter ATM at 12:19 a.m. Mr. Daly confirmed on cross examination that the withdrawal would have actually been made at 11:44 p.m. on the day before or about forty-five minutes before the officers, according to them, observed Mr. Gilmore.
 

 II
 

 We first consider the verdict that the jury returned in this matter. Mr. Gilmore noted an unexplained discrepancy in an addendum to the transcript of the trial. The addendum, which followed a transcription of verbatim proceedings, is not a verbatim entry. It appears to be a notation by the court reporter who prepared the transcript.
 

 This addendum stated that the court charged the jury, that the jury retired to deliberate, and that the jury returned to open court with a verdict of “attempted
 
 possession
 
 of imitation controlled dangerous substance.” (emphasis supplied) Mr. Gilmore correctly argues that neither possession nor attempted possession of an imitation controlled dangerous substance (CDS) is a crime. La. R.S. 40:971.1 A provides in pertinent part:
 

 |4It shall be unlawful for any person to produce, manufacture, distribute, or dispense any substance which is represented to be a controlled dangerous substance and which is an imitation controlled dangerous substance, or any controlled dangerous substance which is a counterfeit controlled dangerous substance.
 

 See also State v. Legaux,
 
 94-1536 (La.App. 4 Cir. 6/29/95), 658 So.2d 319, 322.
 

 Attempted distribution of imitation or counterfeit CDS, however, is a responsive verdict to a violation of § 971.1 A.
 
 See
 
 La.C.Cr.P. art. 814 A(54). The minute entry from the day of trial, unlike the addendum, recites that the jury found the defendant guilty of attempted
 
 distribution
 
 of false CDS. A supplemental transcript was furnished to us after Mr. Gilmore raised the matter of the apparent discrepancy. The verbatim transcript set forth the following:
 

 BY THE COURT:
 

 Ladies and gentlemen, I have reviewed the verdict slips, and this is indeed a proper verdict.
 

 BY THE CLERK (Ms. Friedman):
 

 We, the jury, find the defendant guilty of attempted distribution of imitation controlled dangerous substances.
 

 The trial judge found nothing objectionable in the jury’s verdict.
 
 See
 
 La.C.Cr.P. art. 813. Although the clerk of the district court, despite our request, was unable to furnish us with the jury verdict form,
 
 [3]
 
 we are persuaded that the jury’s verdict was responsive to the offense charged and is lawful. We note that, except for this sole unexplained discrepancy in the addendum, there is no other indication in the record that the verdict is unresponsive or unlawful. Mr. Gilmore’s trial counsel made no objection to the verdict, either at the time
 
 *212
 
 of its return or later by a motion in arrest of judgment.
 
 See
 
 La.C.Cr.P. arts. 859(5) and 862. Moreover, |5at the time of Mr. Gilmore’s sentencing, his trial counsel stated that Mr. Gilmore had been convicted of attempted
 
 distribution
 
 of imitation CDS.
 

 Accordingly, we conclude that the verdict is responsive and lawful, and Mr. Gilmore is not entitled to a new trial.
 
 See
 
 La.C.Cr.P. art. 862.
 

 Ill
 

 We next consider whether there is sufficient evidence of guilt beyond a reasonable doubt. The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set out in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560:
 

 After
 
 Winship
 
 the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed,
 
 but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.
 
 But this inquiry does not require a court to “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” ... Instead, the relevant question is
 
 whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana,
 
 406 U.S., at 362, 92 S.Ct., at 1624-1625, 32 L.Ed.2d 152 (1972).
 

 (bold emphasis in original; italicized emphasis added; ellipsis indicate citations omitted).
 

 A
 

 We first put to rest Mr. Gilmore’s contention that we should disregard the police officers’ testimony because it is unworthy of belief. Without belaboring Mr. Gilmore’s accusations concerning the conduct of the officers, they center around money “missing” from the time of the ATM withdrawal of $400 until the seizure, |fiabout forty-five minutes later, of fourteen dollars as well as conflicting police testimony about which officer “processed” which of the arrested persons. Mr. Gilmore argues that this jury’s verdict was not rational and that this jury “should have been driven to have a reasonable doubt about [Mr. Gilmore’s] guilt by the complete lack of credibility of the police officers.”
 

 But the United States Supreme Court has explained that this standard of review for sufficiency of evidence is highly deferential to the factfinder:
 

 This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder’s role as weigher of the evidence is preserved through a legal conclusion that upon judicial review
 
 all of the evidence
 
 is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon “jury” discretion only to the extent necessary to guarantee the fundamental protection of due process of law.
 

 Jackson,
 
 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). Thus, “[a] reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the
 
 Jackson
 
 standard of review.”
 
 State v. Macon,
 
 2006-481, p. 8 (La.6/1/07), 957 So.2d 1280, 1285-1286. “It is not the function of an appellate court to assess credibility or re-weigh the evidence.”
 
 Id.
 
 The Due Process Clause of the Fourteenth Amendment, the source of
 
 *213
 
 the
 
 Jackson
 
 standard, does not countenance, much less require, that we re-weigh testimony and witness credibility. And “[i]n criminal cases [a court of appeal’s] appellate jurisdiction extends only to questions of law.” La. Const., art. V, § 10(B).
 
 See also State v. Barthelemy,
 
 09-0391, p. 11 (La.App. 4 Cir. 2/24/10), 32 So.3d 999.
 

 | ./Therefore, in discharging our review function for sufficiency of evidence, we cannot re-weigh or re-consider, as Mr. Gilmore’s argues, the officers’ testimony. We must confine ourselves to questions of law except to the extent, and only to the extent, that
 
 Jackson
 
 mandates otherwise.
 

 B
 

 In determining whether
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we consider “in the light most favorable to the prosecution” not only the facts but also reasonable inferences drawn “from basic facts to ultimate facts.”
 
 See Jackson,
 
 443 U.S. at 319, 99 S.Ct. 2781.
 

 An essential element of the offense is the criminal intent required by La. R.S. 40:971.1 is implicit in the word “represented;” when one “represents,” he acts with intent.
 
 State v. Pierre,
 
 500 So.2d 382, 385 (La.1987);
 
 State v. Davis,
 
 02-2059, p. 5 (La.App. 4 Cir. 1/22/03), 839 So.2d 176, 179. Explaining that the culpable mental element in R.S. 40:971.1 is “the
 
 representation
 
 underlying the nature of the substance,” the Louisiana Supreme Court stated: “It is impossible for one to unknowingly represent that a substance is an illegal drug or narcotic. When one ‘represents,’ he acts with intent. Thus, the criminal intent required by the statute is implicit in the word ‘represented.’”
 
 Pierre,
 
 500 So.2d at 384-385 (emphasis added).
 

 However, “[t]he offender’s actual knowledge of the nature of the substance is irrelevant.”
 
 Pierre,
 
 500 So.2d at 385. Under the facts of the instant case, the prosecution bore the burden of proving criminal intent by showing that Mr. Gilmore distributed, or attempted to distribute, a substance which he represented to |sbe a controlled dangerous substance, not that he knew that the substance which he represented was
 
 not
 
 the CDC he was representing it to be.
 
 See Pierre, supra,
 
 385.
 

 Mr. Gilmore questions whether the essential element of “representation” has been proven beyond a reasonable doubt. He pointedly argues that in nearly all the convictions upheld on appeal for a violation of § 971.1, the representation was verbal.
 
 [4]
 
 Because he notes that there is no evidence that any verbal representation was made in this matter, he concludes that no rational trier of fact could conclude beyond a reasonable doubt that he is guilty of representing the substance as a CDS. We disagree. The cited decisions are authority
 
 *214
 
 for the proposition that a verbal misrepresentation is sufficient to prove the essential element of false representation; none purport, however, to be authority that a verbal representation is necessary to prove this element.
 

 For example, in
 
 State v. Davis, supra,
 
 Detective Keating, who was undercover, exchanged twenty dollars for a pill that the defendant verbally represented to be ec-stacy. While there was a verbal communication by the defendant as to the nature of the substance, the court ultimately found that “[t]he fact that defendant sold this single tablet for twenty dollars evidences his intent to represent the product as the controlled dangerous substance Det. Keat-ing knew as ecstaey.”
 
 Davis,
 
 839 So.2d at 180. The court in
 
 Davis
 
 held that
 
 all
 
 the evidence, viewed in the light most favorable to the prosecution, supported a finding beyond a ^reasonable doubt by any rational trier of fact that the defendant had distributed a tablet to the detective while knowingly representing it to be a CDS, when it was in fact an imitation CDS.
 
 Id.
 
 In this case, Mr. Gilmore gave Mr. Salazar a small bag of white powder in exchange for fourteen dollars. In light of this fact and the surrounding circumstances discussed in Part I,
 
 supra,
 
 we do not agree that evidence of a
 
 verbal
 
 representation is required in order to reasonably conclude that Mr. Gilmore represented that the baggie contained a CDS.
 

 In
 
 State v. Jack,
 
 02-0357, p. 2 (La.App. 3 Cir. 10/30/02), 829 So.2d 1089, 1090, the arresting officer identified the defendant as the person who gave her a rock (that appeared to be crack cocaine) in exchange for twenty dollars after she stated to the defendant’s brother that she wanted to purchase a “rock.” The defendant in
 
 Jack
 
 argued on appeal that the evidence against him was insufficient because he “made no representations” as to the content of the false narcotic.
 
 Jack, supra,
 
 829 So.2d at 1091. The court found that, although the undercover officer and the defendant did not have a verbal exchange during the transaction, it was nonetheless reasonable to conclude that the defendant knew that the officer wanted to purchase crack cocaine “because the substance he gave her resembled crack cocaine.”
 
 Jack, supra,
 
 829 So.2d at 1092. Likewise, we conclude that the evidence adduced at trial supports the reasonable inference that Mr. Salazar communicated to Mr. Gilmore his desire to purchase cocaine — and not a substance that merely looked like cocaine.
 
 See Jack, supra.
 

 § 971.1 itself, of course, does not require by its own terms that the representation be
 
 verbal.
 
 A rational trier of fact could have found that the suspicious actions of both Mr. Gilmore and Mr. Salazar, who appeared to experienced police officers to be engaged in a furtive narcotics transaction by | inexchanging a cocaine-appearing substance wrapped in packaging that mimicked the type of packaging used by drug dealers selling real cocaine for cash, was proof beyond a reasonable doubt that Mr. Gilmore represented the non-CDS substance as a CDS. Considering the circumstances, Mr. Gilmore’s representation can be established by his actions, the presentation of the substance and its packaging. The representation need not be verbal. Under these facts, along with Mr. Gilmore’s stated concern that Mr. Salazar’s action of banging on the ATM would get them
 
 both
 
 arrested, a rational trier of fact could have reasonably inferred that the only representation, verbal or otherwise, Mr. Gilmore was making to Mr. Salazar was that he was selling him a CDS.
 

 Based upon our review of all of the evidence in the light most favorable to the prosecution, we find that any rational trier of fact viewing all of the evidence in that
 
 *215
 
 same light could have found Mr. Gilmore guilty beyond a reasonable doubt of all elements of the offense, including the element of false representation.
 

 DECREE
 

 Accordingly, for the foregoing reasons, the conviction and sentence of Lavester Gilmore is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . We have, as we always do, also reviewed the record for errors patent and have found none.
 
 See
 
 La.C.Cr.P. art. 920(2).
 

 [2]
 

 . Mr. Gilmore did not assign this as an error.
 
 See
 
 La.C.Cr.P. art. 920(1).
 
 See also Melendez-Diaz v. Massachusetts,
 
 557 U.S. -, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).
 

 [3]
 

 . There does not appear any formal requirement for filing the jury's verdict into the record. See La.C.Cr.P. art. 811.
 

 [4]
 

 . Cases cited by Mr. Gilmore include:
 
 Davis, supra,
 
 (defendant said he had some ecstasy and sold the officer a tablet for twenty dollars);
 
 State v. Ingram,
 
 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923 (an undercover officer asked defendant if he had "20 hard,” which the same officer explained at trial was street slang for twenty dollars worth of crack cocaine);
 
 State v. Taylor,
 
 04-200, p. 3 (La.App. 5 Cir. 10/26/04), 888 So.2d 272, 275 (the undercover officer met the defendant, who he asked for "two '20's', street slang for two rocks of crack cocaine.”);
 
 State v. Robinson,
 
 624 So.2d 1260, 1262 (La.App. 2 Cir.1993) (a confidential informant requested to purchase a "twenty cent rock.”);
 
 State v. Ray,
 
 521 So.2d 582 (La.App. 1 Cir.1988) (the defendant replied that he had amphetamines);
 
 State v. McGee,
 
 478 So.2d 249, 250 (La.App. 2 Cir.1985) (the defendant responded that they were not caffeine but "Black Mollies ... amphetamines.”), and
 
 State v. Ourso,
 
 438 So.2d 1239, 1241 (La.App. 3 Cir.1983) (defendant "indicated that the white powdery substance within the packets was
 
 crystal.").