PAUL A. BONIN, Judge.
| jornale Pernell, the defendant, was found guilty as charged of the second degree murder of Richard Bruce. The trial judge later sentenced Mr. Pernell to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. First, Mr. Pernell appeals his conviction, arguing that no rational fact-finder could have found him guilty of second degree murder and that, as the remedy, we should enter a judgment of guilty on the lesser included offense of manslaughter. Second, Mr. Pernell asserts that we should reverse his conviction and order him a new trial because he has been denied his constitutional right to judicial review based upon a complete record through the material omission of documents and exhibits from trial court proceedings bearing on the merits of his appeal. Third, Mr. Pernell argues that his sentence is unconstitutionally excessive in light of his youthful age of nineteen years old at the time of the commission of this offense.
Mr. Pernell’s argument that the trial court’s judgment of guilty was irrational is reviewed under the well-known Jackson v. Virginia standard. See 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Mr. Pernell, however, is not arguing that the essential elements of second degree murder were not proven beyond a reasonable doubt, but rather that no rational *23 fact-finder could have found that Mr. Per-nell had not proven the mitigating factors entitling him to a judgment of manslaughter by a preponderance of the evidence. See State v. Lombard, 486 So.2d 106, 110-111 (La.1986). After reviewing the judgment, we find that a rational trier of fact could find that Mr. Pernell did not prove the mitigating factors by a preponderance of the evidence. Furthermore, because Mr. Pernell’s argument necessarily concedes that all of the essential elements of second degree murder were proven beyond a reasonable doubt, we therefore affirm Mr. Pernell’s conviction.[1]
Mr. Pernell argues that he has been denied his constitutional right to judicial review “based upon a complete record of all evidence upon which the judgment is based,” La. Const, art. I, § 19, due to the loss of crime scene photographs and diagrams marked-on by witnesses at trial. We conclude that, while the lost or missing exhibits were omitted from the record of the trial on appeal, neither the defendant’s ability to identify and assign errors nor our duty to discover errors patent on the face of the record were prejudiced by the omission of the marked trial exhibits. See La.C.Cr.P. art. 920. We are confident that we are able to afford Mr. Pernell full and meaningful review.
We would have considered Mr. Pernell’s claim regarding the excessiveness of his sentence, but have found an error patent requiring remand because the trial | ..judge failed to act on Mr. Pernell’s pending motion to reconsider his sentence. See La. C.Cr.P. arts. 881.1 A(l) and 881.2. We thus conclude that the trial judge shall, on remand, reconsider the imposition of the life sentence at hard labor without the benefit of parole, probation, or suspension of sentence under the directives set forth in State v. Sepulvado, 367 So.2d 762 (La. 1979), and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672.
We turn now to a more complete explanation of our decision.
I
Mr. Pernell does not dispute that he intentionally fired the shot which killed Richard Bruce, who was also not yet twenty years old at the time. The bullet (one of three fired at Mr. Bruce from a distance) entered Mr. Bruce’s head just below his eye and lodged in his skull until it was removed during the coroner’s autopsy. Mr. Pernell’s girlfriend, Telisha Diaz, was an eyewitness to the shooting and testified at Mr. Pernell’s trial.[2]
On the afternoon of the shooting, Mr. Pernell drove Ms. Diaz to the grocery store so that she could purchase some goods for her mother. Because Ms. Diaz was in her pajamas, Mr. Pernell decided that she would remain in the car while he went inside the store. Mr. Bruce was sitting on the steps outside of the store, and, as Mr. Pernell approached, Ms. Diaz observed them arguing with each other. She did not, however, hear the content of the argument. Both Mr. Pernell and Mr. 14 Bruce entered the store together and made their respective purchases. There is no testimony about whether their argument continued inside the store. Both, *24 however, exited the store at about the same time.
Mr. Bruce was standing on the store’s steps exchanging words with Mr. Pernell when Mr. Pernell reached the car and fired his gun at Mr. Bruce. According to Ms. Diaz and the investigating officers, Mr. Bruce was unarmed at time. The only testimony to the contrary of this was given by Donna Diaz, Telisha’s mother, who stated that Mr. Pernell told her that he believed Mr. Bruce was armed. (Mr. Per-nell, however, did not testify at the trial.[3])
Both the prosecution and the defense seemed to believe that the young men’s argument was related to an incident from the previous day involving Mr. Pernell and Mr. Bruce’s younger brother, Jonas Bruce. According to Jonas, he was playing basketball at a public park in their neighborhood when an associate of Mr. Pernell’s, nicknamed Chicken, parked his car on the playground. Because Jonas knew that this would provoke a neighbor to call the police, he asked Chicken to move his car. This request apparently offended Chicken as he then began to fight with Jonas. Chicken’s friends, Mr. Pernell and “Glen,” also took turns fighting with Jonas. By the time Jonas returned home, his older brother, Mr. Bruce, had already heard details of the fight.
| ¡Apparently Chicken’s instigation of the fight led to neighborhood rumors, initially believed by the police, that Chicken killed Mr. Bruce. Donna Diaz testified that, when Mr. Pernell admitted to her that he killed Mr. Bruce, he also suggested that the entire matter would “blow over” because the police mistakenly believed that the shooter was Chicken. At first, Telisha Diaz lied to investigators by confirming that Chicken was the shooter. Shortly afterwards, however, with some prompting from her mother, Ms. Diaz told the truth about the identity of the perpetrator.
At the time he announced his judgment,[4] the trial judge expressed that this was a premeditated murder, and not manslaughter.
II
In this Part, we explain why we find that a rational fact-finder could conclude that Mr. Pernell did not prove by a preponderance of the evidence that he was guilty of manslaughter rather than second degree murder. As such, we do not enter a judgment on the lesser included offense of manslaughter as Mr. Pernell requests.
A
The crime of manslaughter includes “a homicide which would be murder ... under Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.” La. R.S. 14:31 A(l). But 16such provoked “sudden passion” or “heat *25 of blood” are not elements of the offense of manslaughter. They are only mitigating factors which lessen the culpability of a defendant charged with second degree murder. See Lombard, 486 So.2d at 110; State v. Moore, 11-0025, p. 7 (La.App. 4 Cir. 9/7/11), 75 So.3d 22, 26.[5]
When a defendant claims, as here, that the trier of fact’s verdict or judgment of guilty of second degree murder is irrational and that he is entitled to a verdict or judgment of guilty of manslaughter, the burden of proof shifts to the defendant to establish by a preponderance of the evidence that he, having been sufficiently provoked, acted in “sudden passion” or “heat of blood.”[6] See Lombard, 486 So.2d at 111. “Where such proof has been introduced, a second degree murder verdict [or judgment] is inappropriate.” Id. That is, “[w]hen the preponderance of the evidence shows that a homicide was committed in sudden passion or heat of blood which would have deprived an average person of his self-control and cool reflection,” a fact-finder, whether judge or jury, “errs in rendering a [judgment or] verdict of second degree murder.” State ex rel. Lawrence v. Smith, 571 So.2d 138, 136 (La.1990).
In reviewing Mr. Pernell’s claim, we “must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, 17could have found that the mitigatory factors were not established by a preponderance of the evidence.” Lombard, 486 So.2d at 111 (emphasis added). In making this determination under Lombard, we proceed in the same manner as we would for any insufficiency-of-evidence review under Jackson. See 443 U.S. at 319, 99 5.Ct. 2781. Thus, in discharging our review function, we consider 11 all of the evidence ” before the actual fact-finder. Id. (emphasis in original). Proof by a preponderance of the evidence is defined as, taking the evidence as a whole, the fact to be proved is more probable or likely than not. See Crowell v. City of Alexandria Through Snyder, 558 So.2d 216, 218 (La.1990).
This standard of review is highly deferential to the fact-finder as it “gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781. We may impinge on the fact-finding function of the trier of fact only to the extent necessary to assure compliance with Jackson. See State v. Macon, 06-0481, p. 8 (La.6/1/07), 957 So.2d 1280, 1285-1286. The Due Process Clause of the Fourteenth Amendment, the source of the Jackson standard, does not countenance, much less require, that we re-weigh testimony and witness credibility. See State v. Gilmore, 10-0059, p. 6 (La.App. 4 Cir. 10/6/10), 50 So.3d 208, 212-213. See also Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
*26 “It is not the function of an appellate court to assess credibility or reweigh the evidence.” Macon, 06-0481, p. 8, 957 So.2d at 1286. Moreover, in Louisiana, |8“[i]n criminal cases[, a court of appeal’s] appellate jurisdiction extends only to questions of law.” La. Const, art. V, § 10(B). See also State v. Barthelemy, 09-0391, p. 24 (La.App. 4 Cir. 2/24/10), 32 So.3d 999, 1015. Therefore, in discharging our review function for sufficiency of evidence, we should not re-weigh or reconsider testimony or the reasonable inferences drawn from basic facts. See Gilmore, 10-0059, p. 5, 50 So.3d at 212.
If we were to conclude, however, that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, “could only have found” the defendant guilty of manslaughter, then the conviction for second degree murder must be vacated. Smith, 571 So.2d at 136. And, under such circumstances, the court must render a conviction for the lesser included responsive judgment of manslaughter. See La. C.Cr.P. art. 814A(3); Lombard, 486 So.2d at 111; State v. Heck, 560 So.2d 611, 614 (La.App. 4 Cir.1990).
With these principles of review in mind, we turn to an examination of the evidence in this case to explain why we determine that a rational trier of fact could have concluded that Mr. Pernell did not prove by a preponderance of the evidence that he was acting in “sudden passion” or “heat of blood” when he killed Mr. Bruce.
B
In this case, there is only one eyewitness to the shooting who testified— Ms. Diaz. She did not, however, hear the argument that transpired between Mr. Pernell and Mr. Bruce. Nothing suggests that Mr. Bruce instigated the conflict rather than 19Mr. Pernell. Even if we accepted Mr. Pernell’s statement that Mr. Bruce was the instigator, there is no evidence from the testimony of Ms. Diaz that the shooting was done in “sudden passion” or “heat of blood.” There is no testimony as to the content of any supposed provocation by Mr. Bruce to determine if it was sufficient to deprive an average person of his self-control and cool reflection. The burden of persuasion was on Mr. Pernell, not the prosecution, to establish the existence of such facts by a preponderance of the evidence. See La. C.E. art. 302(1).
Mr. Pernell was a fair distance away from Mr. Bruce when he shot him in the face. Indeed, when he was shot, Mr. Bruce was standing in the same place where he had been sitting when Mr. Per-nell arrived. There is nothing to suggest that Mr. Bruce interfered -with Mr. Per-nell’s entry into the store or with his purchases in the store. The evidence is clear that Mr. Bruce was not pursuing or threatening Mr. Pernell when Mr. Pernell fired his weapon on the unarmed Mr. Bruce. Notably, Ms. Diaz did not testify that, following the shooting, Mr. Pernell appeared angry, agitated, or even upset. In the end, Mr. Pernell was also coolly willing to let Chicken take the blame for the homicide that he committed.
Thus, we hold that a rational trier of fact, viewing all of the evidence (and lack of evidence) in the light most favorable to the prosecution, could conclude that Mr. Pernell failed to prove by a preponderance of the evidence that there were mitigating factors in his killing of Mr. Bruce. The conviction for second degree murder was not irrational. Therefore, we do not render a conviction for manslaughter as requested by Mr. Pernell.
_½111
In this Part, we explain why the omission from the trial record of certain photographs and exhibits marked-on by wit *27 nesses at trial did not sufficiently prejudice Mr. Pernell’s appeal. Mr. Pernell’s constitutional rights under Louisiana Constitution Article I, Section 19 were not violated and we will not vacate his conviction and order a new trial.
A
In Louisiana, a defendant convicted of a crime triable by a jury may, as of right, appeal the judgment or verdict to the appropriate court of appeal. See La. Const, art. V, § 10; La.C.Cr.P. art. 912.1. In order to assure that appeals are properly and thoroughly considered, the Louisiana Constitution provides a complementary constitutional right which guarantees “judicial review based upon a complete record of all evidence upon which the judgment is based.” La. Const, art I, § 19. See also State v. Landry, 97-0499, p. 2 (La.6/29/99), 751 So.2d 214, 215. The scope of what constitutes a “complete record” under Article I, Section 19 encompasses “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, and orders, and charges by the court, and objections, questions, statements, and arguments of counsel,” La. C.Cr.P. art. 843, as well as “exact copies of all documentary evidence and other evidence ... in the order in which such evidence was filed.” Uniform Rules, Courts of Appeal, Rule 2-1.7. “It is the duty of the trial court to ‘require that criminal [^proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done.’ ” Landry, 97-0499, 751 So.2d at 216 (quoting La. C.Cr.P. art. 17). “The trial judge is duty-bound to see that the court reporter makes a true, complete and accurate record of the trial.” Id. See also La. R.S. 13:961 C(l). And, notably, it is not the duty of the defendant to assure an adequate record exists. See Landry, 97-0499, p. 3, 751 So.2d at 216.
Two justifications form the foundation for the need for complete and comprehensive records. The Supreme Courts of both the United States and Louisiana have endorsed these justifications. First, it is essential in an adversarial legal system, particularly when counsel on appeal was not representing the client at trial, that a dependable record be provided so that errors by the trial court may be reviewed, assigned, and supported by appellate counsel. See Hardy v. U.S., 375 U.S. 277, 280-281, n. 3, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); State v. Robinson, 387 So.2d 1143, 1144 (La.1980); Landry, 97-0499 p. 3, 751 So.2d at 215. And, second, a complete record also ensures that the appellate court may review the transcripts for any errors committed during trial. See Robinson, 387 So.2d at 1144. See also State v. Walker, 02-1350, p. 13 (La.App. 4 Cir. 4/9/03), 844 So.2d 1060, 1067. These two bases align with the scope of our appellate review as set forth in La. C.Cr.P. art. 920, which statute restricts our consideration of errors on appeal to those “designated in the assignment of errors,” and those “discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” La. C.Cr.P. art. 920.
|i2Not every omission from a record on appeal, however, constitutes a violation of constitutional rights warranting reversal of a conviction and the ordering of a new trial. See Walker, 02-1350, p. 11, 844 So.2d at 1066. Sometimes “an incomplete record may be adequate for [full] appellate review.” State v. Hawkins, 96-0766, p. 8 (La.1/14/97), 688 So.2d 473, 480. See also State v. Bright, 00-1255, p. 7 (La.App. 4 Cir. 2/6/02), 809 So.2d 1112, 1116-1117. To justify reversal of a conviction and the ordering of a new trial, we *28 must find that the omission from the trial record affects “substantial rights of the accused.” La.C.Cr.P. art 921. This imports the harmless error rule into this analysis. La.C.Cr.P. art. 921 cmt. c. Whether an omission constitutes harmless or reversible error depends on its materiality. State v. Deruise, 98-0541, pp. 10-11 (La.4/3/01), 802 So.2d 1224, 1234; Landry, 97-0499, 751 So.2d at 215. “[I]nconse-quential omissions or slight inaccuracies do not require reversal.” State v. Hoffman, 98-3118, p. 49 (La.4/11/00), 768 So.2d 542, 586. See also State v. Fortenberry, 11-0022, p. 10 (La.App. 4 Cir. 7/27/11), 73 So.3d 391, 397; State v. Allen, 95-1754, p. 11 (La.9/5/96), 682 So.2d 713, 722. The materiality of a given omission is measured by the prejudicial effect of the omission on the defendant in accessing the full scope of appellate review as set forth in La.C.Cr.P. art. 921. See Deruise, 98-0541, p. 11, 802 So.2d at 1234; Fortenberry, 11-0022, p. 10, 73 So.3d at 397. In determining whether an omission has sufficiently prejudiced a defendant, we consider the importance of the omission along with the value, relevance, and nature of other evidence made available in the trial record in light of the specific assignments of |1serror set forth by the defendant as well as the errors patent on the face of the record. See, e.g., Hawkins, 96-0766, p. 8, 688 So.2d at 480. If an omission is found to be material, the defendant’s conviction should be reversed, Hoffman, 98-3118, p. 49, 768 So.2d at 586, and “the interests of justice require that a defendant be afforded a new, fully recorded trial.” Landry, 97-0499, p. 3, 751 So.2d at 215-216.
B
Here, Mr. Pernell argues that the omission of certain exhibits from the trial record has denied his constitutional right to “judicial review based upon a complete record of all evidence upon which judgment is based.” La. Const, art. I, § 19. Many of these exhibits were photographic or documentary, and some of them had marks placed on them by the witnesses during their respective testimonies at trial. Mr. Pernell, however, did not assign this omission as an error in his original brief. Counsel for Mr. Pernell only filed this supplemental assignment of error after we ordered supplemental briefs regarding this issue.
Counsel recognizes that all of the trial testimony and most of the exhibits, although none that were marked-on, are contained in the trial record. The marked-on exhibits missing from the record were lost during Hurricane Katrina many years after Mr. Pernell’s conviction. Mr. Pernell was found guilty of second degree murder on May 28, 2002. A motion for an out-of-time appeal was filed in his case on April 4, 2004. Mr. Pernell sent numerous letters requesting status check on his filing, spanning from May 2005 to November 2011. His motion, however, was not acted upon until December of 2011 when the order of appeal was signed.
| ^Nevertheless, the loss of the marked-on exhibits introduced at trial does not prevent us from providing constitutionally adequate review of Mr. Pernell’s case on appeal. Unquestionably the marked-on exhibits certainly and importantly aided the fact-finder in his understanding of and determination of the locations or placements of Mr. Pernell, the vehicle and Mr. Bruce relative to the store during the moment immediately prior to Mr. Bruce’s death. But much of that same information is accessible to us by reading the transcript and comparing the testimony to the photographic exhibits which are available but not marked on by Ms. Diaz. The recorded testimonies of Ms. Diaz and Detective Robette are more than sufficient to *29 establish that the car was a fair distance away from the door of the grocery store where Mr. Bruce was standing. And, for the purposes of our review, we have accepted that Mr. Pernell was not so close to Mr. Bruce that by pointing a gun in Mr. Bruce’s direction as it was fired is itself sufficient evidence of intent to kill or is necessarily the only reasonable inference to be drawn therefrom. See, e.g. State v. Johnson, 08-1488, p. 10 (La.App. 4 Cir. 2/10/10), 33 So.3d 328, 334. See also State v. Byrd, 2012-0556 (La.6/5/13), 119 So.3d 801; State v. Procell, 365 So.2d 484 (La. 1978).
Thus, the loss of the marked-on exhibits and their omission in the trial record are not material to the dispositive issues in this case, and the omission does not require reversal of the conviction. Therefore, we do not reverse Mr. Pernell’s conviction and do not order a new trial.
_biv
We turn now to the matter of Mr. Per-nell’s sentence.
The exclusive punishment authorized by the Legislature upon conviction of second degree murder is “life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.” La. R.S. 14:30.1 B. At the time of Mr. Pernell’s sentencing in 2002, the trial judge suggested, even encouraged, the filing of a motion to reconsider the sentence, which was done on behalf of Mr. Pernell. See La.C.Cr.P. arts. 881.1 A(l).
The trial judge, however, did not rule upon the motion to reconsider. We find this to be an error patent. See State v. James, 05-1468, p. 3 (La.App. 4 Cir. 10/4/06), 942 So.2d 569, 570; La.C.Cr.P. art. 920(2). We consistently refuse to review the excessiveness of a defendant’s sentence on appeal until the district court has ruled on a pending or outstanding motion for reconsideration.[7] See James, 05-1468, p. 3, 942 So.2d at 570. The remedy under such circumstance is to remand the case so that the district court may consider and rule upon the motion. Id. at 571.
Before we set out our remand instructions, however, we note that, due to the absence of any range whatsoever in the penalty provision for second degree murder, this is not a case where the legislature intends for a sentencing judge to exercise his discretion and impose a sentence which is gradated according to the | ^individualized circumstances of the offense and the offender. Cf. State v. Sepulvado, 367 So.2d at 765. We emphasize, nonetheless, that a sentencing judge is constitutionally authorized to guarantee that sentences are not excessive, id., and, in rare and exceptional cases, a sentencing judge does have the discretion to deviate downward from a legislatively mandated sentence. See State v. Johnson, 97-1906, pp. 8-9, 709 So.2d at 676-677 (Departures downward from a minimum sentence should occur “only in rare situations” ... where the legislature’s sentence is not meaningfully tailored to the offender, the gravity of the offense, and the circumstances of the case); State v. Lindsey, 99-3302, p. 9 (La.10/17/00), 770 So.2d 339, 345-346; Sepulvado, 367 So.2d at 764. See, e.g., State v. Sims, 13-0177, p. 11-12 (La.App. 4 Cir. 8/28/13), 123 So.3d 806, 813, 2013 WL 4565221.
The constitutional prohibition against excessive sentences,[8] and Sepulva *30 do, 367 So.2d at 767, require a sentencing judge, when a defendant properly moves for reconsideration of his sentence, to explicitly determine whether the defendant’s situation is one of those rare and exceptional circumstances that would justify a downward departure from the legislatively mandated and presumptively constitutional sentence of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.
We particularly note, however, that we have not reviewed, and are not expressing any view about the merits of Mr. Pernell’s contentions regarding the excessiveness of his sentence.
_jjjREMAND INSTRUCTIONS
We remand this matter to the district court and direct that it conduct a hearing on the defendant’s pending motion to reconsider sentence under the criteria established in Sepulvado, 367 So.2d 762, and Johnson, 709 So.2d 672. If the sentencing judge concludes that Mr. Pernell’s sentence of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence is excessive, and that a downward departure is authorized, he shall impose the most severe sentence that is not constitutionally excessive. Lindsey, 99-3302, p. 5, 770 So.2d at 343. If the sentencing judge decides to downwardly depart from the legislatively mandated sentence either by reason of its duration or, for example, by its restriction on parole eligibility, he shall justify his reduction. See State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669, 669. We reserve the parties’ rights to appeal any adverse ruling by the district court on remand. See, e.g., State v. Rainey, 09-1510, p. 5 (La.App. 4 Cir. 7/21/10), 43 So.3d 1090, 1093.
DECREE
The second degree murder conviction of Romale Pernell for the killing of Richard Bruce is affirmed. The matter, however, is remanded to the district court for a hearing on the defendant’s motion to reconsider his sentence, reserving unto the parties the right to appeal the sentence following the district court’s disposition of the motion.
CONVICTION AFFIRMED; REMANDED FOR RECONSIDERATION OF SENTENCE.

. We have, as we always do, examined the record for errors patent. See La.C.Cr.P. art. 920(2). We have detected none pertaining to Mr. Pernell's conviction.

. Ms. Diaz entered into a memorandum of understanding with the district attorney respecting her pending charges, which was disclosed to the trial judge and the defense. The agreement required Ms. Diaz to testify in accordance with her prior statement to the police in exchange for allowing her to plead guilty to accessory after the fact to second degree murder. See La. R.S. 14:25.

. Mr. Pernell alternatively argues on appeal that his defense of "imperfect” self-defense entitles him to a judgment of manslaughter. We have reviewed the record for any indication that such a defense was urged at trial and can find nothing but his statement made to Donna Diaz. Under the holding of State v. Juluke, we consider this alternative argument no further. See 98-0341, pp. 4-5 (La. 1/8/99), 725 So.2d 1291, 1293 ("The Jaclcson standard also does not provide a defendant with a means of splitting alternative and inconsistent defenses in different forums, raising one defense before the jury and when that fails, a second defense presupposing a different set of facts in an appellate court conducting sufficiency review under Jackson and La. C.Cr.P. art. 821(E).”)

. Properly speaking, a jury announces a verdict, but a judge without a jury announces a judgment. See La.C.Cr.P. art. 765(8).

. At a trial the prosecution is not required to prove beyond a reasonable doubt that a defendant did not act in "sudden passion” or "heat of blood.” See Lombard, 486 So.2d at 111 n. 9. And because manslaughter is a responsive verdict or judgment to second degree murder, see La. C.Cr.P. art. 814A(3), no evidence of "sudden passion” or "heat of blood” is needed in order for the trier of fact to return a verdict or judgment of guilty of the lesser included offense. See Lombard, 486 So.2d at 111 n. 9. See also State v. Tompkins, 403 So.2d 644 (La. 1981); State v. Peterson, 290 So.2d 307 (La. 1974).

. This burden shifting framework with respect to a mitigating factor is constitutionally permissible. See Patterson v. New York, 432 U.S. 197, 209-211, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

. Thus, we pretermit Mr. Pernell’s assignments of error which raise excessiveness of the sentence or ineffective assistance of counsel relating to the sentence.

. "No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or *30 unusual punishment.” La. Const, art. I, § 20 (emphasis added).