# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 04-1009

PATTI L. HUKILL AND MAXINE HUKILL

VERSUS

STATE OF LOUISIANA, THRU THE DOTD

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 89-C-2947-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Billie Colombaro Woodard, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Woodard, J., concurs in the result.

Raymond C. Jackson, III
Allen & Gooch
Post Office Drawer 3768
Lafayette, LA   70502
(337) 291-1000
COUNSEL FOR DEFENDANT/APPELLEE:
    State of Louisiana, Thru the DOTD

Christian M. Goudeau
407 North Market Street
Opelousas, LA   70570
(337) 942-5766
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Patti L. Hukill
    Maxine Hukill

AMY, Judge.

The plaintiffs filed suit seeking damages related to an automobile accident on US Highway 167 in St. Landry Parish. The plaintiffs assert that the accident occurred due to defects of the roadway and adjacent shoulder. The trial court found in favor of the defendant, contending that the plaintiffs failed to offer sufficient proof of the location at which they asserted the accident occurred. The plaintiffs appeal. For the following reasons, we affirm.

**Factual and Procedural Background**

The automobile accident at issue in this matter occurred in the early morning hours of June 13, 1988. The record indicates that Patti L. Hukill and her mother, Maxine Hukill, spent the previous day and evening together, ending with a visit to a local bar. Patti explained that she and her mother left the bar at closing time, approximately 2:30 a.m. At Maxine's suggestion, the two did not return to their respective homes, but continued driving on US 167 in St. Landry Parish. The two were subsequently involved in an automobile accident, causing serious injury. The precise location of the accident along US 167 is at issue.

Patti and Maxine filed a petition instituting this matter on June 8, 1989. The State of Louisiana, through the Department of Transportation and Development was named as the defendant. The plaintiffs alleged in their petition that the accident occurred when "the front right and right rear tires of petitioner's vehicle went off the road surface and onto the shoulder." The plaintiffs further alleged that Patti then "attempted to bring the right side of her vehicle back onto the hard surface roadway because of an approximately five to six inch drop between the hard surface and the road shoulder. As a result of her efforts, she lost control of her vehicle, causing it to strike a culvert and ultimately flipping the vehicle onto its roof where it slid down the

roadway." The plaintiffs alleged that the State had custody of the road and shoulder, which they asserted was defective, causing the accident.

When the matter eventually reached trial, in June 2003, it was apparent that the location of the accident was at issue. The plaintiffs asserted that the accident occurred near the intersection of US 167 and a location described as Prayer House Road. In support of their version of events, the plaintiffs provided testimony from their family members who explained that they traveled to the location after the accident, finding debris and evidence of a car having run off the road at the Prayer House Road location. These witnesses also testified as to the presence of a drop-off between the roadway and the shoulder.

The State disputed that the Prayer House Road intersection was the location of the accident, referencing the location contained in the police report of the responding Louisiana State Police Trooper. The report listed the location of the accident as being at the intersection of US 167 and a location described at trial as Thomas Road. The record indicates that the location urged by the plaintiffs is located slightly in excess of one mile south of the Thomas Road location advanced by the State.

The trial court found in favor of the State, concluding that the plaintiffs failed to demonstrate by a preponderance of the evidence that the accident occurred at the Prayer House Road intersection. A finding that the Prayer House Road location was the site of the accident was essential to the plaintiffs' case, given their assertion that the alleged roadway defect was present at this location. There was no assertion that the Thomas Road location advanced by the State contained such a defect. Due to its conclusion regarding the site of the accident, the trial court found it unnecessary to reach the issue of whether the State breached an owed duty.

2

The plaintiffs appeal, assigning the following as error:

I.  The Trial Court committed manifest error in holding that Plaintiffs-Appellants failed to prove by a preponderance of the evidence that the accident occurred at the "Prayer House Road" site.

II. The Trial Court committed manifest error in failing to accept as true the uncontradicted testimony of Plaintiffs-Appellants regarding the site where the accident occurred, especially in view of the fact that their testimony was corroborated by other direct and circumstantial evidence.

III. Alternatively, the Trial Court committed legal error in failing to accept as true the uncontradicted testimony of Plaintiffs-Appellants regarding the site where the accident occurred, especially in view of the fact that their testimony was corroborated by other direct and circumstantial evidence.

IV. The Trial Court committed legal error in admitting into evidence, over Plaintiffs-Appellants timely objection, the police accident report of former State Trooper Joseph Meyers [sic].

## Discussion

*Determinations Regarding Location*

The plaintiffs first argue that the trial court erred in finding that they failed to establish, by a preponderance of the evidence, that the June 13, 1988 accident occurred near the intersection of US 167 and Prayer House Road. Significantly, the plaintiffs contend that this site featured a five to six inch drop-off between the roadway and the shoulder. As briefed, the plaintiffs' argument is essentially that the trial court was required to accept its version of events.[1] The plaintiffs' argument

_____

[1]This argument is seen in a passage in its brief in which the plaintiff argues:

As the Trial Court stated in its Reasons for Judgment, the Court rested its finding that the accident occurred at the Thomas Road site on the accident investigation performed by former State Trooper Meyers [sic].

The evidence of Trooper Meyers' [sic] accident investigation consisted of the accident report which was admitted into evidence, over the Plaintiff's objections, because, due to his claimed lack of any recollection of the accident or its investigation, Trooper Meyers [sic] was deemed an "unavailable witness" under the

3

depends in part, on what they contend was the uncontradicted testimony of its witnesses, and what they contend was unreliable evidence offered by the State.

The trial court rendered reasons for ruling, noting that the plaintiffs' case rested upon a preliminary determination that the situs of the accident was at the location they described. However, the trial court remarked that the location of the accident, as reported by the investigating Louisiana State Police Officer, Trooper Joseph Myers, was at a location near the intersection of US 167 and Thomas Road. The trial court reviewed the evidence presented, explaining in part:

> Plaintiff's [sic] contentions of fault on the part of the Defendant rest upon the notion that the site of the accident occurred at a point approximately one mile further south on US Hwy 167 which is the intersection of US Hwy 167 and Prayer House Rd. In addition, Plaintiff [sic] contends that the accident occurred there and was caused by a five inch drop-off from the road and the shoulder.
>
> In considering the elements in this case the law requires that the Plaintiff must first prove a prima facia case by a preponderance of the evidence that the accident occurred at the alleged Prayer House Rd. intersection. The Plaintiffs, Patti and Maxine Hukill, both gave conflicting testimony as to how and where the vehicle flipped and came to rest. Kelly Hukill, Patti's brother, testified that he inspected the site on a few occasions, but took no pictures, nor could he testify that anyone else in his presence did such. Don Maricle, Patti Hukill's husband, testified that he observed a small pile of debris and tire tracks through the ditch, but could also not offer any additional evidence for the Prayer House Road location. Plaintiffs' expert Olin Dart theorized that the car left the roadway, returned to the roadway, made a counter-clockwise rotation, and rolled over. Olin Dart could not determine the exact entry

provision of Louisiana Code of Evidence Article 804(A). The accident report was admitted under the residual exception set forth at Louisiana Code of Evidence Article 804(B)(6). Additionally, the Trial Court did point, in its Reasons for Judgment, to corroboration of the accident report in the form of the DOTD expert having driven the distance between the Thomas Road site and the intersection of U.S. Highway 167 and Louisiana Highway 749 and measuring the same distance in his odometer as that noted on the accident report between these two points.

The Plaintiffs, on the other hand, presented the testimony of <u>five witnesses</u>, including themselves, who all placed the accident just north of the intersection of U.S. Highway 167 and Prayer House Road, a little over one (1) mile south of the Thomas Road site.

angle required for such a counter-clockwise rotation accompanied by a rollover as he theorized and gave no indication that the angles and calculations were consistent with the Prayer House Road intersection. In sum such evidence and testimony did not create a cohesive explanation, nor did it prove by a preponderance of the evidence that the accident site was one other than what was reported by Officer Myers.

As a result, The Court finds that the evidence presented by the Plaintiff[s] attempting to show that the accident occurred at the intersection of Hwy 167 and Prayer House Road, consists of five witnesses whose testimony appeared to the Court to be self-serving.

Their testimony, with all due consideration given to the time period between the accident and the proceedings, does not rise to a level sufficient to establish that the accident occurred at the Prayer House Road intersection where they contend that there exists a 5" drop-off. Thus, previous to the Court considering any other elements of the duty-risk analysis the Plaintiffs must first establish the Prayer House Road site as being the location of which the accident occurred and DOTD's duty attached. Absent such proof by the Plaintiff[s] there need not be consideration as to DOTD's duty nor breach of that duty to the Plaintiff[s] for the following reasons: 1) the intersection of LA Hwy 167 and Thomas Road reported as where the accident occurred had no 5" drop-off, 2) the DOTD had no constructive knowledge of any unreasonably dangerous defect that existed there, 3) that intersection was maintained and posed no unreasonable risk to the Plaintiffs at the time of the accident.

In conclusion, this Court recognizes that it is well settled that the DOTD is not an insurer of the safety of all motorists on the road, but has the obligation to maintain the roads and highways in a reasonably safe condition for a reasonably prudent driver. *Littleton v. Piazza*, 527 So.2d 1160 (La.App. 3rd Cir. 1988), *State Farm Mutual Insurance Company v. Slaydon*, 376 So.2d 97 (La.1979); *Wilson v. State, Through Department of Highways*, 364 So.2d 1313 (La.App. 3rd Cir. 1978); *Devall v. Morgan*, 424 So.2d 522 (La.App. 5th Cir. 1982). Absent the Plaintiffs meeting their burden to place the accident at the Prayer House Road intersection this Court dismisses the Plaintiffs' petition in favor of the Defendant.

The trial court's reasons reveal a number of factual findings leading to its ultimate conclusion, including those regarding consideration of the plaintiffs' expert witness. Furthermore, a number of the factual findings stemmed from credibility determinations regarding the plaintiffs and their witnesses. On appellate review, we

are mindful that these types of factual and credibility determinations are best left to the trier of fact. The Louisiana Supreme Court has explained that, on appellate review, credibility determinations must be left to the trier of fact. *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838. This is true even where that determination involves evaluation of the testimony of an expert witness. *Id.* In fact, "[a] fact-finder may accept or reject the opinion expressed by an expert, in whole or in part." *Id.* at 843.

As can be seen above, the trial court's reasons for ruling indicate a lack of weight placed on the testimony offered by the plaintiffs. The trial court was aware that the accident occurred in 1988, yet trial was not conducted until 2003. At the time of trial and at the time the parties' experts examined the alleged scene, the roadway and shoulder had changed. Given such changes, evidence as to the alleged road condition or drop-off was presented primarily through the testimony of family members and related to what they reported seeing more than a decade before trial. Certainly the trial court was entitled to consider this length of time in evaluating the plaintiffs' witnesses' testimony, including that of the plaintiffs' expert.

We also point out that the plaintiffs' witnesses' versions of events were not documented by photographs of the location revealing the condition as alleged. The plaintiffs asked the trial court to find that the accident occurred at a location with an alleged defect. However, the presence of this drop-off was not presented in such a credible fashion as to require acceptance. Instead, Patti's husband explained that he measured the drop-off by the use of his hand.[2] While one cannot say that a particular

---

[2]In testifying as to the drop-off, Patti's husband, Donald Maricle, explained as follows in questioning by the plaintiffs' attorney:

type of evidence as to location or description of the roadway was required of the plaintiffs, it remains the plaintiffs' obligation to prove, by evidence deemed sufficient, each essential factor in its case. Here, location was one such factor. Our review of the record and exhibits does not reveal that the evidence, as presented by the plaintiffs, was so compelling as to require that the trial court accept it.

Furthermore, the plaintiffs' evidence was not presented alone. The trial court was also aware of evidence presented by the State. Much contested in this matter was the introduction of the State Trooper's accident report. Trooper Myers described the location as "23 tenths of mile" north of LA 749. Again, the record indicates that this is the location urged by the State, near the Thomas Road intersection. Neither does the accident report bear any notation indicating defects in the roadway or shoulder at that location. The trial court could permissibly construe that such a drop-off, if present at that location, would have been remarked upon.

As part of their argument, the plaintiffs argue that the trial court erred in failing to accept their witnesses' testimony, as they contend their versions were essentially

------

Q.   At the point where the tire tracks get back onto the roadway, the pavement, did you observe any deviation in levels between the pavement and the shoulder?

A.   I sure did.

Q.   What did you observe?

A.   That there was a drop there. In fact, along the whole length of the accident site there was a drop.

Q.   How tall or how steep was the drop off?

A.   I stuck my hand there and it was right along in my - - the palm of my hand here.

Q.   Did you have occasion to measure against the palm of your hand with a ruler what that represents in inches?

A.   It was roughly five, five and a half inches.

7

uncontradicted. They assert this is true because the State's version of events, offered through the accident report contained inaccuracies/inconsistencies, and other evidence bolstering the plaintiffs' witnesses' accounts. The plaintiffs direct this court to "the long standing jurisprudential principal [sic] that the Trial Court should accept as true the uncontradicted testimony of a witness, absent same [sic] sound reason in the record for its rejection." In this passage, the plaintiffs reference the Louisiana Supreme Court's decision in *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1147 (La.1979), wherein the court stated: "In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony."

In this portion of their argument, the plaintiffs reference a number of instances in the record which they contend bolster their witnesses' versions of events and discredits those of the State's witnesses. We have reviewed each of these points and all of the evidence presented by the parties. Having done so, we do not find that the trial court was required to find an absence of evidence "casting suspicion on the reliability" of the plaintiffs' witnesses' testimony. *West*, 371 So.2d at 1147. Not only could the trial court consider the source of the witness testimony, from the plaintiffs and from family members, but the trial court was also in possession of the accident report. Although the accident report contained some inconsistencies focused upon by the plaintiffs, the trial court was certainly able to find that the location of the accident as reported by Trooper Myers was evidence to be considered. Thus, we do not find that the trial court was required to have accepted the plaintiffs' version of events.

This assignment lacks merit.

8

*Accident Report*

In their final argument, the plaintiffs contend that the trial court erred in accepting the accident report of Trooper Myers into evidence. They assert that this evidence should have been excluded as unacceptable hearsay pursuant to La.Code Evid. art. 803(8)(b)(i).

Hearsay is defined at La.Code Evid. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Also relevant to consideration of this issue are the following:

**Art. 802.    Hearsay rule**
Hearsay is not admissible except as otherwise provided by this Code or other legislation.

**Art. 803.    Hearsay exceptions; availability of declarant immaterial**
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(8)    Public records and reports.**   (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:

(i)    Its regularly conducted and regularly recorded activities;

(ii)    Matters observed pursuant to duty imposed by law and as to which there was a duty to report; or

(iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.

(b)    Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule:

(i)    Investigative reports by police and other law enforcement personnel.

9

(ii)    Investigative reports prepared by or for any government, public office, or public agency when offered by that or any other government, public office, or public agency in a case in which it is a party.

**Art. 804.    Hearsay exceptions; declarant unavailable**
**A.    Definition of unavailability.**  Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court.  This includes situations in which the declarant:

. . . .

(3) Testifies to a lack of memory of the subject matter of his statement[.]

. . . .

**B.    Hearsay exceptions.**  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

**(6) Other exceptions.**  In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it.  If, under the circumstances of a particular case, giving of this notice was not practicable or failure to give notice is found by the court to have been excusable, the court may authorize a delayed notice to be given, and in that event the opposing party is entitled to a recess, continuance, or other appropriate relief sufficient to enable him to prepare to meet the evidence.

At the time Trooper Myers' videotaped deposition was presented to the trial court, the plaintiffs objected to the information from the report being introduced into evidence.  In ruling on the objection, the trial court remarked that it had previously

permitted the plaintiffs to present evidence as to statements made by Trooper Myers to a family member regarding the accident location shortly thereafter. Aware of the plaintiffs' assertion that information contained within the report should be specifically excluded pursuant to La.Code Evid. art. 803(8)(b)(i), the trial court went on to find the material admissible under Article 804(B)(6), explaining:

> What I attempted to say and prefaced it with that was under 804 of the Code of Evidence (B)(6), (A)(3) first, this officer clearly said throughout and it was stipulated by counsel in pre-trial conference and many other times, he has no independent recollection of the events which led to the accident in question herein under 804(A)(3), that makes the declarant unavailable with the (B) portion of 804 there are six exceptions to the hearsay rule. The sixth exception is in fact a sort of catchall provision. In allowing Mr. Kelly Hukill to testify relative to statements he says were made by Officer/Senior Trooper at the time Joey Myers, I noted that Mr. Goudeau [counsel for the plaintiffs] had not given the written notice of his intent to use such statements and then I found the excusability based upon the facts and circumstances of this case. 804(B)(6) goes on to state that when I allow such I am to allow the opposing side the ability to meet that evidence. It doesn't tell me how I should do that, ergo the goose and gander colloquialism. I know here this is a fourteen-year-old accident. The officer retired in 1989, went to Florida. He testifies he has absolutely no recollection whatsoever. I choose to find that this is admissible so as to allow Mr. Jackson [counsel for the State] the opportunity to meet your evidence, which was also allowed in under the - - despite the hearsay rules because I found that the evidence - - I'm not making a finding as to which one is accurate at all, but I think it's trustworthy and then I think Kelly Hukill testified truthfully that's what he thinks he heard. I think this officer in preparing this report thinks it's accurate and it's therefore trustworthy and I'll allow it in under that basis. However, I'm only going to allow it in to this extent. What I heard was that he went to school for accident reconstruction. Rather than redact, I'm going to simply state that I'm not going to consider any statements this accident report contains relative to inattentiveness of the driver, reasons for movements, directions traveled, whether it hit a culvert, didn't hit a culvert. So any of the notations as to findings, which are conclusive as to how this accident occurs I discount and do not consider. I do allow in the diagram and any other blocks such as whether he found there would have been vision obscurements, what the road surface was, the lighting, the traffic controls, the type of movement, the kind of location, the alignment of the road, the traffic control conditions. I'm going to allow it in for those purposes because he's not an expert in accident reconstruction.

11

Our review reveals no error in the trial court's determination to permit Trooper Myers' deposition testimony and the accident report pursuant to La.Code Evid. art. 804. First, it is clear that Trooper Myers met the definition of an unavailable witness as described by La.Code Evid. art. 804(A)(3). He repeatedly explained in his deposition that he lacked an independent recollection of the events. As for Article 804(B)(6), the plaintiffs primarily question the determination that the report met the article's trustworthiness requirement. The plaintiffs point to various inconsistencies in the report, and assert that these inconsistencies render the report untrustworthy. However, in ruling, the trial court was aware of such inconsistencies and was free to conclude that such inconsistencies did not render the report untrustworthy in its entirety. Furthermore, given the knowledge of any inconsistencies, the trial court was able to accord any information on the report the appropriate weight. For these reasons, we find this assignment to be without merit.

## DECREE

For the foregoing reasons, the decision of the trial court is affirmed. All costs of this proceeding are assigned to the plaintiffs, Patti L. Hukill and Maxine Hukill.

**AFFIRMED.**