PAUL A. BONIN, Judge.
 

 I,The grand jury indicted Cleveland Moore for the second-degree murder of Joyce Rader and the attempted second-degree murder of John Newlin. The petit jury returned the responsive verdicts of manslaughter and of aggravated battery, respectively. Mr. Moore appeals the convictions. While he concedes the sufficien
 
 *24
 
 cy of the evidence with respect to the aggravated battery conviction, he argues on appeal that the evidence is insufficient to convict him of the killing of Ms. Rader. He also argues that the trial judge committed prejudicial error by admitting testimony of Mr. Newlin’s — as Mr. Moore characterizes it — “dying declaration.” This error, he argues, would result in a new trial.
 

 After a review of all of the evidence under the
 
 Jackson v. Virginia
 
 standard, we find that there is sufficient evidence for any rational trier of fact to conclude beyond a reasonable doubt that Mr. Moore is guilty of the intentional killing of Ms. Rad-er. We also find that the testimony admitted over Mr. Moore’s objection did not affect a substantial right and, even if erroneously admitted, was a harmless |
 
 ¡error.
 
 Consequently, we affirm the convictions and sentences.
 
 [1]
 
 We explain our decision in greater detail below.
 

 I
 

 In this Part we summarize the procedural developments in this case and set forth the facts necessary to an understanding of the issues.
 

 A
 

 On February 12, 2009, the defendant, Cleveland Moore, was indicted for the second-degree murder of Joyce Rader and the attempted second degree murder of John Newlin. The defendant pled not guilty to both counts. After a jury trial Mr. Moore was found guilty of manslaughter on count one and aggravated battery on count two. Mr. Moore filed motions for new trial and post-verdict judgment of acquittal. The trial court denied both motions. Mr. Moore waived delays, and the trial court sentenced the defendant to forty years at hard labor with credit for time served on count one and ten years at hard labor with credit for time served on count two. The two sentences are to be served concurrently. Mr. Moore filed a motion to reconsider sentence, which was denied by the trial court. Mr. Moore then filed a motion for appeal.
 

 B
 

 On November 15, 2005, Mark Baringer knocked on the front door of John New-lin’s home in the Faubourg Marigny. When Mr. Newlin failed to answer the door, Mr. Baringer peered into the house and observed that some interior doors 13were open, indicating to him that Mr. Newlin was in the house. Mr. Baringer then went around to the back door. At the back door, he could hear from the inside of the house Mr. Newlin’s cries for help. Using a large piece of wood, he pried the locked iron gate from its position and kicked in the locked back door.
 

 Inside he discovered on the floor Mr. Newlin and the body of Joyce Rader within feet of each other. Both were bloody and covered in glass. Mr. Baringer asked Mr. Newlin what had happened and who did this to him to which Mr. Newlin replied “Cleveland.” Mr. Baringer then ran out of the house and asked a neighbor to call the emergency operator.
 

 Mr. Newlin at the trial recalled that on the preceding evening his sometime lover, Cleveland Moore, had come to his home in the company of Ms. Rader. Mr. Moore had keys to Mr. Newlin’s home. After an at-first uneventful visit, Mr. Moore and Ms. Rader separated from Mr. Newlin and went to the front room, leaving Mr. Newlin
 
 *25
 
 in the back of the house at his computer. Upon Mr. Moore and Ms. Rader’s return from the front room, Mr. Newlin felt threatened and became frightened by them; he retreated from them toward the kitchen. Mr. Moore grabbed Mr. Newlin by the arm and raised a bottle to hit him. Mr. Newlin began to plead with Mr. Moore not to do anything. The last thing he remembers before waking up in a hospital is Ms. Rader smiling as Mr. Moore raised the bottle to attack him.
 

 Ms. Rader’s body had numerous wounds, which the medical examiner considered to most likely have been caused by a knife. Many were shallow or | /‘hesitation” wounds, suggesting that her attacker was working up the courage to kill. One large cut penetrated her liver and lung and could have been fatal given enough time. But the fatal blow was one of the two stab wounds entering the back of Ms. Rader’s neck and exiting out the front of her neck, cutting her jugular vein. She bled to death within minutes.
 

 When the police arrived, the house had been thoroughly ransacked. This disarray contrasted to an earlier visit the previous evening by Louie Vallon. He described the condition of the house as neat and orderly when he left, which was before Mr. Moore and Ms. Rader arrived.
 

 After the discovery of Ms. Rader’s body, Mr. Newlin’s cell phone and Mr. Moore were both missing and unaccounted for. When the police search for Mr. Moore’s whereabouts became dormant, Judith Wenger, a friend of Mr. Newlin, conducted her own search for him. She located him in the Florida Panhandle, where finally the police arrested him. Mr. Newlin’s cell phone records showed that the phone was physically in the Panhandle after the attack on Mr. Newlin and that it was used to communicate with a Sandra Enid Diaz, who had the same social security number as the Sandra E. Moore who visited Mr. Moore when he was incarcerated awaiting trial.
 

 There was little other physical evidence to tie Mr. Moore to the attacks on Mr. Newlin and Ms. Rader. The police explained that their forensic capabilities were impaired on account of the aftermath of Hurricane Katrina, which had 1 ¿occurred a little over two months earlier. Thus, neither the wine bottle nor a washed knife was fingerprinted.
 

 II
 

 In this Part we first address the constitutional standard of review for claims of insufficiency of evidence, and then turn to consider the evidence presented to the jury as the fact-finder. Finally, we explain why we find from the record that there was sufficient evidence to prove beyond a reasonable doubt every element of the offense of manslaughter.
 

 A
 

 The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set out in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). “After
 
 Win-ship
 
 the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.”
 
 Id.
 
 “But this inquiry does not require a court to ‘ask itself whether
 
 it
 
 believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ”
 
 Id.
 
 quoting
 
 Woodby v. INS,
 
 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). (emphasis added by Jackson). “Instead, the relevant question is whether, after viewing the evidence in the light
 
 *26
 
 most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 (bold emphasis in original);
 
 see also Johnson v. Louisiana,
 
 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), (stating: “Jury | fiverdicts finding guilty beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt.”).
 

 In discharging our review function, we consider
 
 “all of the evidence
 
 ” before the actual fact-finder.
 
 Jackson,
 
 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). The United States Supreme Court has explained that the standard of review for sufficiency of evidence is highly deferential to the fact-finder because it “gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.”
 
 Id.
 
 “The criterion thus impinges upon ‘jury1 discretion only to the extent necessary to guarantee the fundamental protection of due process of law.”
 
 Id.
 

 Similarly, “[a] reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the
 
 Jackson
 
 standard of review.”
 
 State v. Macon,
 
 2006^81, p. 8 (La.6/1/07), 957 So.2d 1280, 1285-1286. “It is not the function of an appellate court to assess credibility or re-weigh the evidence.”
 
 Id.
 
 The Due Process Clause of the Fourteenth Amendment, the source of the
 
 Jackson
 
 standard, does not countenance, much less require, that we re-weigh testimony and witness credibility. And “[i]n criminal cases [a court of appeal’s] appellate jurisdiction extends only to questions of law.” La. Const. art. V, § 10(B).
 
 See also State v. Barthelemy,
 
 09-0391, p. 24 (La.App. 4 Cir. 2/24/10), 32 So.3d 999, 1015.
 

 Therefore, in discharging our review function for sufficiency of evidence, we cannot re-weigh or re-consider reasonable inferences drawn from basic facts to ultimate facts. We must confine ourselves to questions of law except to the extent, 17and only to the extent, that
 
 Jackson
 
 mandates otherwise.
 
 State v. Gilmore,
 
 10-0059, p. 5 (La.App. 4 Cir. 10/6/10), 50 So.3d 208, 212.
 

 The crime of manslaughter includes “a homicide which would be murder ... under Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.” La. R.S. 14:31 A(l).
 
 [2]
 
 Second-degree murder is defined as “the killing of a human being ... when the offender has the specific intent to kill or to inflict great bodily harm”. La. R.S. 14:30.1 A(l). “Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; they are only mitigating factors lessening the culpability of a defendant.
 
 State v. Lombard,
 
 486 So.2d 106, 110 (La.1986). Therefore, because provocation is not an element of manslaughter, in our review function in this case, we need not consider whether there is any evidence of the kill
 
 *27
 
 er’s provocation and need only focus on whether there was an intentional killing.
 

 B
 

 We turn now to a consideration of the record facts. We explain why we find from our review that the evidence is sufficient to convict Mr. Moore in Ms. Rader’s killing.
 

 Mr. Moore correctly argues that there is no direct evidence that he is the person who attacked Ms. Rader. Thus, we must evaluate whether her killing at the hand of Mr. Moore is an ultimate fact which can reasonably be inferred from the |sbasic facts. The basic facts in this case are all established for the purpose of our constitutional review by the uncontradicted testimony of the witnesses. “Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion.”
 
 State v. Marshall,
 
 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369;
 
 see also State v. Robinson,
 
 10-0885, pp. 7-8 (La.App. 4 Cir. 12/21/10), 54 So.3d 1208, 1213.
 

 As noted, manslaughter is a homicide that would be considered murder,. but for the existence of mitigating circumstances that render the defendant less culpable for his crime. Here, the specific intent to kill may be inferred from the manner in which Ms. Rader was attacked. Because Ms. Rader received two stab wounds to her neck and a large cut into her liver and lung, it is clear that someone had the specific intent to kill her or to inflict great bodily harm. Her killing was surely not accidental; it was an intentional killing.
 

 Because the remaining factors to convict of murder or manslaughter are present, the sole question then is
 
 who
 
 intentionally killed Ms. Rader. Mr. Moore did not urge any justification for Ms. Rader’s killing, such as self-defense or defense of others.
 
 See
 
 La. R.S. 14:20 and 22. Thus, the state did not have the burden of putting forward evidence negating a justification defense.
 
 See State v. Batiste,
 
 96-1010, p. 12 (La.App. 5 Cir. 1/27/98), 708 So.2d 764, 771.
 

 Here, at the time of the attack on Mr. Newlin, only two other persons were in his home: Mr. Moore and Ms. Rader. At the moment Mr. Newlin was attacked, Ms. Rader was unharmed and smiling. Mr. Moore left the house sometime after the attack on Mr. Newlin and before Mr. Bar-inger discovered Ms. Rader’s body. There is no doubt that Mr. Moore attacked Mr. Newlin. And there is no doubt that | nMr. Moore left the New Orleans area for the Florida Panhandle area, where he used Mr. Newlin’s cell phone. Even though the Newlin home had been ransacked, there was no sign whatsoever that there had been a break-in; the home was secure when Mr. Baringer arrived in the morning.
 

 Based upon the uncontradicted testimony of Mr. Newlin and of Mr. Baringer, a rational fact-finder could reasonably exclude either of them as Ms. Rader’s killer. And Mr. Moore does not suggest anyone else who may have killed Ms. Rader. A reasonable inference from the basic facts is that Mr. Newlin’s attacker, Mr. Moore, is the killer of Ms. Rader.
 

 Mr. Moore suggests that the
 
 modus op-erandi
 
 of Mr. Newlin’s attacker, whose weapon was likely a wine bottle, and of Ms. Rader’s killer, whose weapon was likely a knife, gives rise to a hypothesis that the attacker and killer are different persons. But the prosecution is not “under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.”
 
 Jackson,
 
 443 U.S. at 326, 99 S.Ct. 2781. Even if we accepted that the historical facts supported such a hypothesis, we would still be required to defer to the fact-finder’s resolution of the
 
 *28
 
 issue in favor of the prosecution.
 
 Id.
 
 When a conviction is based on circumstantial evidence, such evidence must exclude only every
 
 reasonable
 
 hypothesis of innocence.
 
 See
 
 La. R.S. 15:438;
 
 see also State v. Camp,
 
 446 So.2d 1207 (La.1984). Thus, if a rational fact-finder reasonably rejects the defendant’s hypothesis of innocence, that hypothesis fails; and, unless another one creates reasonable doubt, the defendant is guilty.
 
 See State v. Captville,
 
 448 So.2d 676 (La.1984).
 

 Having reviewed all of the evidence in the light most favorable to the prosecution, we conclude that there is sufficient evidence for a rational trier of fact to find that all the essential elements of manslaughter have been established by | inproof beyond a reasonable doubt. Thus, Mr. Moore’s conviction of manslaughter is affirmed.
 

 Ill
 

 In this Part we address the testimony admitted over Mr. Moore’s objection, which he has characterized as a “dying declaration,” and explain why the trial court’s admission of this testimony does not require reversal and a new trial.
 

 A
 

 The issue first arose during the prosecution’s direct examination of Mr. Baringer, who was testifying before Mr. Newlin was called as a witness. The pertinent verbatim portion of the examination is set out below:
 

 MR. BARINGER: I asked him, “who did this to you?” I said, “What happened? Who did this to you?
 

 PROSECUTOR: Was he able to respond?
 

 MR. BARINGER: Yes, sir.
 

 PROSECUTOR: What did he say?
 

 DEFENSE: Objection to hearsay.
 

 COURT: Sustained.
 

 PROSECUTOR: Your Honor, his dying declaration. Can we approach?
 

 (OFF-RECORD DISCUSSION AT THE BENCH)
 

 COURT: Repeat the question. PROSECUTOR: Mr. Baringer, was John Newlin able to tell you who did this to him?
 

 MR. BARINGER: Yes, sir.
 

 PROSECUTOR: What did he say?
 

 |nDEFENSE: Again, objection to hearsay, Your Honor.
 

 COURT: Overruled. I’ll note your objection.
 

 PROSECUTOR: What did he say, Mr. Baringer?
 

 MR. BARINGER: He said, “Cleveland.”
 

 PROSECUTOR: What did you do at that point?
 

 MR. BARINGER: I asked him again, “Did you say, Cleveland?” He said, ‘Yes, Cleveland.” And then I ran. I told him to hold a minute. I was going to get help.
 

 At the conclusion of another witness’ testimony, and out of the presence of the jury, Mr. Moore’s counsel moved for a mistrial. During the argument Mr. Moore’s counsel asserted that the trial judge had admitted the objectionable testimony as a dying declaration. The trial judge promptly contradicted the defense counsel and stated that her justification for admitting the testimony was that the prosecutor had represented to her at the bench conference that Mr. Newlin did not remember telling Mr. Baringer that Mr. Moore was his attacker. Based upon the representation, she concluded that Mr. Newlin was “unavailable as a witness” because of his lack of memory of the subject matter of his statement.
 
 See
 
 La. C.E. art.
 
 *29
 
 804 A(3). She denied the motion for mistrial.
 

 When the prosecution did call Mr. New-lin as a witness, he testified that he did not remember being on the kitchen floor, or even seeing or speaking to Mr. Baringer about what caused him to be on the kitchen floor. But Mr. Newlin further testified on direct examination:
 

 PROSECUTOR: Mr. Newlin, do you see the man who attacked you with that bottle in the courtroom today?
 

 MR. NEWLIN: Yes.
 

 JjjPROSE CUTOR: Where is he?
 

 MR. NEWLIN: Right there (pointing).
 

 PROSECUTOR: Mr. Newlin, is there any doubt in your mind—
 

 MR. NEWLIN: No.
 

 PROSECUTOR: —that that’s Cleveland Moore?
 

 MR. NEWLIN: No.
 

 Mr. Moore’s counsel did not cross-examine Mr. Newlin on his identification of Mr. Moore as his attacker.
 

 B
 

 Mr. Moore timely objected to the trial court’s ruling admitting the testimony of Mr. Baringer and stated the specific ground for his objection.
 
 See
 
 La. C.E. art. 103 A(l). Despite the trial judge’s statement explaining her ruling,
 
 see
 
 La. C.E. ART. 103 B, Mr. Moore persists on appeal in arguing that she improperly admitted the statement of Mr. Newlin to Mr. Bar-inger, believing it to come within the “dying declaration” exception to the hearsay rule.
 
 See
 
 La. C.E. art. 804 B(2) (“A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.”)
 

 Mr. Moore correctly argues that in order to admit a hearsay statement as a dying declaration, the court must be satisfied of two factors: the timing requirement and the content requirement; it must be shown that the declarant believed his death was imminent/impending and that the statement concerned the cause or circumstances of the impending death.
 
 See Garza v. Delta Tau Delta Fraternity Nat’l,
 
 05-1508, 05-1527, p. 11 (La.7/10/06), 948 So.2d 84, 92. Mr. Moore, comparing Mr. Newlin to the declarant who also did not die from his wounds in
 
 State v. Moye,
 
 further correctly argues that “there is no testimony indicating or implying that [the declarant] believed that his death was imminent” despite his wounding and the loss of a great deal of blood.
 
 State v. Moye,
 
 99-2413, p. 6 (La.App. 4 Cir. 6/14/00), 765 So.2d 1103, 1106-1107. In the absence of such evidence, the statement is not admissible as a dying declaration exception to the hearsay rule.
 
 Id.
 
 at 1007. But just because Mr. Newlin’s statement does not qualify as a dying declaration does not necessarily result in its exclusion from evidence if it qualifies under another exception.
 
 Id.
 

 The trial judge was correct in not admitting the statement as a dying declaration. Her stated reason for her ruling, as we indicated at Part III-A
 
 ante,
 
 was the unavailability of Mr. Newlin. Generally, a declarant is “unavailable as a witness” when he cannot testify to the substance of the statement, which includes when the declarant “[testifies to a lack of memory of the subject matter of his statement”. La. C.E. art. 804 A(3). This pro-vision contemplates that a physically available person will first “testify” as to lack of memory
 
 before
 
 the court will admit the person’s hearsay statement. But a stipulation as to the declarant’s lack of memory has been found to satisfy this requirement.
 
 See State v. Davis,
 
 44,656, pp. 11-12 (La.App. 2 Cir. 11/18/09), 26 So.3d 802, 810.
 
 *30
 

 See also Hukill v. State ex rel. Dept. of Transp. & Development,
 
 04-1009, p. 10 (La.App. 3 Cir. 12/18/04), 896 So.2d 82, 89. Here, the trial judge did not ascertain beforehand either from the declarant or by stipulation that Mr. Newlin lacked memory about the contents of the statement reported by Mr. Baringer. But, as the trial unfolded and Mr. Newlin testified to his lack of memory, any error in the premature finding of his ^unavailability was cured, and it did not affect any “substantial right” of Mr. Moore. La. C.E. art. 103 A.
 

 Notably and understandably, Mr. Moore does not argue that the admission of the hearsay statement, even under the available statutory exception, violated his Sixth Amendment right to confront the witnesses against him.
 
 See Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Mr. Moore, as stated earlier, did in fact have an opportunity to cross-examine Mr. Newlin during the trial.
 

 Mr. Moore now argues that admission of the statement prejudicially “buttressed” Mr. Newlin’s testimony. “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice”.
 
 See
 
 La. C.E. art. 403. Mr. Moore contends that evidence of Mr. Newlin’s statements to Mr. Baringer soon after the attack allows the jury to infer that Mr. Newlin remembers Mr. Moore as being his attacker. But there is no prejudice to Mr. Moore in this. If Mr. Moore had challenged Mr. Newlin’s trial recollection
 
 of
 
 Mr. Moore as his attacker through “an express or implied charge against him of recent fabrication or improper influence or motive,” then Mr. Newlin’s statement to Mr. Baringer would not be hearsay and would have been admissible as a prior
 
 consistent
 
 statement. La. C.E. art. 801 D(l)(b). Thus, simply because Mr. Moore chose not to confront Mr. Newlin about his in-court identification of Mr. Moore as his attacker and made no charge of recent fabrication against him, he cannot now speculate about prejudice resulting from the court’s admitting evidence which would have buttressed Mr. Newlin’s testimony. On the point of his identification as Mr. Newlin’s attacker, Mr. Moore did not challenge Mr. Newlin’s testimony. Thus, the admission would be harmless as it is cumulative.
 
 State v. Broadway,
 
 96-2659, p. 25 (La.10/19/99), 753 So.2d 801, 818. Therefore, Mr. Moore is not entitled to a new trial.
 

 DECREE
 

 The convictions of the defendant, Cleveland Moore, for manslaughter in the death of Joyce Rader and for aggravated battery of John Newlin are affirmed.
 

 AFFIRMED
 

 [1]
 

 . We have conducted an independent review of the record for any errors patent and have found none.
 
 See
 
 La. C. Cr. P. art. 920.
 

 [2]
 

 .
 
 Manslaughter is a responsive verdict to a charge of second-degree murder, and the relevant portion of the manslaughter statute constitutes a lesser-and-included offense of the relevant portion of the second-degree statute. In this case, the conviction under review is the jury’s selection of an unchallenged responsive verdict. Even if manslaughter was not a lesser-and-included offense of second-degree, we would still find sufficiency of evidence to prove the elements of second-degree murder, the offense charged.
 
 See
 
 La. C. CR. P. art. 814 A(3) and C;
 
 State v. Porter,
 
 93-1106, pp. 5-6 (La.7/5/94), 639 So.2d 1137, 1141;
 
 State ex rel. Elaire v. Blackburn,
 
 424 So.2d 246, 251-52 (La.1982);
 
 State v. Pleasant,
 
 10-1533, p. 7 (La.App. 4 Cir. 5/18/11), 66 So.3d 51, 56.