DANIEL L. DYSART, Judge.
| defendant, Deshaun Torregano, appeals his jury conviction of armed robbery. For the reasons that follow, we affirm the conviction and sentence.
PROCEDURAL BACKGROUND
By bill of information dated July 6, 2009, defendant was charged with one count of armed robbery, a violation of La. R.S. 14:64, to which he entered a plea of not guilty. After a preliminary hearing was held on March 5, 2010, the trial court found no probable cause and ordered the defendant released. A jury trial was conducted on September 16, 2010, which resulted in defendant’s conviction as charged. On October 14, 2010, defendant was sentenced to eighteen years at hard labor, without the benefit of parole, probation or suspension of sentence. Defendant’s motions for new trial and post-verdict judgment of acquittal were denied and defendant timely filed the instant appeal.
FACTUAL BACKGROUND
On the evening of February 7, 2009, Austin Ward was robbed at gunpoint while walking home from a Mardi Gras parade. Mr. Ward testified that, around 9:00 p.m. that night, he walked alone from the French Quarter to his home in a nearby neighborhood. As he neared his house, he heard footsteps and the voices of |¡>young men behind him. He turned and saw three young men who he thought were following him. He continued on his way, turned around again and noticed that the men were a little closer to him. When he was about fifteen feet from his front doors, he heard one of the young men command him to turn around and give him his money. Because he believed he could still make it to his home, he continued forward. The same young man again demanded that he turn around and give him his money. When he turned, he saw a young man standing about four feet from him, pointing a gun at him.[1] Two other young men stood behind the gunman, one standing three to four feet from him and the other in the street, about nine to ten feet away from him. While the street lighting was apparently poor,[2] Mr. Ward testified that he was able to see the faces of both the gunman and the man standing closer behind him, who Mr. Ward identified as defendant. He was not, however, able to see the third man in the street.
Mr. Ward reached into his pockets and pulled out either his keys or cell phone and he saw defendant gesture to the gunman, who again demanded Mr. Ward’s money. He then removed his wallet from his pocket, threw it to the ground and saw defendant pick it up. Shortly thereafter, the three young men fled the scene on foot. Mr. Ward called 911,[3] and an investigating officer came to the scene of the robbery. Mr. Ward testified that he described all three young men to the officer.
[oA few days later, Mr. Ward met with Detective Lester Marshall and gave him a drawing that he made of the gunman.[4] He *79 later met with Officer Stephanie Taillon, who works for the New Orleans Police Department in preparing composites, photographs and computer sketches. With Mr. Ward’s help, she created a color composite of the gunman.
Several days after the robbery, Mr. Ward was driving in his neighborhood when he saw someone who he thought was the gunman and defendant. As he got closer to and passed them, he “was sure that they were [sic] two of the three” who had robbed him. He happened upon a police car parked on the street, explained the situation and together, they returned to where Mr. Ward had seen the two young men, who were no longer in the area. Mr. Ward continued to see the two together on several occasions over the next few months and contacted Detective Marshall each time he saw them.
On May 6, 2009, Mr. Ward was again driving in his neighborhood when he encountered the scene of an accident with an overturned vehicle in the middle of the street. A crowd had gathered and as Mr. Ward scanned the crowd, he noticed both the gunman and defendant. He approached a police officer on the scene and positively identified the gunman and defendant. As the gunman was apprehended first, defendant “attempt[ed] to try to walk away,” but was apprehended as well.
ERRORS PATENT
A review of the record reveals no patent errors.
DISCUSSION
Defendant filed a pro se appellate brief, which was later supplemented by the brief of his court-appointed appellate counsel. Both briefs essentially raise one 14assignment of error, that the evidence was insufficient to support defendant’s conviction of armed robbery. Defendant relies on two arguments: (1) that Mr. Ward’s identification of defendant was unreliable and (2) that Mr. Ward’s “in-court identification based on an internet search did not rule out a reasonable probability of misidentification.”
The standard of appellate review of a sufficiency of the evidence claim was set forth in the U.S. Supreme Court decision of Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560 (1979), which explained that “the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.” However, the reviewing court need “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Id. (Citation omitted). Rather, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (Citation omitted, emphasis supplied). The Louisiana courts have consistently applied this standard of review for the sufficiency of evidence. See, e.g. State v. Marcantel, 2000-1629 (La.4/3/02), 815 So.2d 50; State v. Fontenot, 2011-0742 (La.App. 4 Cir. 2/22/12), 87 So.3d 154; State v. Moore, 2011-0025 (La.App. 4 Cir. 9/7/11), 75 So.3d 22; State v. Boyd, 2007-0534 (La.App. 4 Cir. 12/5/07), 972 So.2d 1240.
This appellate review of the evidence does not dimmish the importance of the jury’s function, as our jurisprudence also indicates that the determination of the weight of the evidence is a question of fact which rests solely with the jury who |5may accept or reject, in whole or in part, the testimony of any witnesses. See: State v. *80 Silman, 95-0154, p. 12 (La.11/27/95), 668 So.2d 27, 35. Accordingly, it is not our function to assess credibility or re-weigh the evidence and we “may impinge on the factfinding function of the jury only to the extent necessary to assure that the defendant has received due process of law.” State v. Bordenave, 95-2328, p. 2 (La.4/26/96), 678 So.2d 19, 20.
We recently reiterated the standard for determining whether the prosecution has sufficiently proven identity in State v. Anderson, 2010-1589, p. 7 (La.App. 4 Cir. 2/15/12), 85 So.3d 747, 752-753:
When the key issue is the defendant’s identity as the perpetrator, the State is required to negate any reasonable probability of misidentification. State v. Weary, 2003-3067, p. 18 (La.4/24/06), 931 So.2d 297, 311; State v. Kelly, 2010-0853, p. 6 (La.App. 4 Cir. 12/12/10), 54 So.3d 1159, 1163. In such a case this Court examines the reliability of an identification using the five factors set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), which include: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. State v. Jones, 2010-0018, p. 7 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 832, writ denied, 2010-2683 (La.4/25/11); 62 So.3d 85; State v. Mathieu, 2007-0204, p. 16 (La.App. 4 Cir. 2/27/08), 980 So.2d 716, 725.
Importantly, though, in proving identity, the trier of fact may rely on a single witness. As we noted in Anderson, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. Id. at p. 7, 85 So.3d at 753, citing, State v. Wells, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306. We are not to disturb the factfinder’s decision concerning the credibility of a witness |fiunless it is clearly contrary to the evidence. Id.; State v. James, 2009-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996.
In this matter, defendant relies heavily on the 911 tape recording as suggesting that Mr. Ward could not reasonably identify him as one of the perpetrators of the robbery. In the recording introduced at trial, Mr. Ward gave a description of the gunman as being “between the ages of ten and twelve, five foot, two inches, gray hooded with blue jeans.” And, when asked about the other two, Mr. Ward stated that he “did not get a good look at them.” He also stated that “the best look [he] had was of the one who had the gun.” At trial, he admitted that he only drew a picture of the gunman but explained:
I thought at the time, probably naively, that if I were to focus on a rendering of the boy that I felt that I could most confidentially [sic] depict ...
What I mean is that I don’t honestly at any point feel like I could have accurately rendered [defendant’s] face. However, I know from my years of training, academic training and just my years of living that to recognize someone you don’t have to be able to in detail depict the features of their face. Their face becomes imprinted in your head, and they almost become — it is inexplicable. They are there. You know who they are. You see them. And, you realize that you know them. And, so, I couldn’t make a drawing of [defendant], I recognized him, though.”
Later in his testimony, he reiterated:
... there is a difference in my eyes between being able to accurately depict *81 a face from memory and simply recognizing them. Recognition, I think, you know, there is a lot of weight to simply being able to recognize someone.
Mr. Ward clarified that he did not give a physical description of defendant in the 911 call, placed about ten minutes after the robbery, describing it as a |/‘pressured moment.” Significantly, however, he did give a description of him to the investigating officer. He described his “general habitues [sic], his height, his weigh, skin color” and his hair as “short dredlocks.”
Officer Hillary Smith, who was the first officer to respond to the 911 call and who prepared an incident report corroborated that Mr. Ward gave a description of defendant on the night of the robbery. She testified that Mr. Ward described defendant’s clothing as “dark” and, while she neglected to document it in her report, when asked whether Mr. Ward gave her “any description as to complexion of any of the individuals or hair style of any of the individuals,” she responded that she was “certain that he did give a clothing and facial appearances.” (Her answering in the plural suggests that Mr. Ward gave more than one description of same). Officer Marshall also testified that Mr. Ward described defendant by his height and weight.
Mr. Ward was very clear in his testimony. He stated that he “very plainly” saw defendant’s face at the time of the robbery. He looked at defendant after seeing the gunman to see whether he, too, was holding a gun. He looked at him when he made head motions at the gunman. And he looked at him when he went to retrieve Mr. Ward’s wallet.
Mr. Ward was clearly confident in his identification of defendant and the jury clearly found his testimony credible. Defendant called several witnesses, two of whom are his sisters and one of whom is related to one of his sisters, who testified that defendant had been at a family party on the night of the robbery. As the jury found defendant guilty, it clearly found defendant’s witnesses to lack credibility. The jury, too, disregarded defendant’s own testimony as well. The jury did so perhaps because defendant denied that he “hung out” with the gunman, | ¿while Mr. Ward testified that he saw them together on several occasions over the period of a few months.
Finally, we find no merit to defendant’s argument that Mr. Ward’s identification of defendant was based on an internet search. Mr. Ward did testify that he had been looking for defendant on the internet, but when specifically asked whether it was “to make sure that [he] would be certain of [his] in-court identification,” he testified that “that is not the reason why.”
As the appellate court’s function is not to assess the credibility of witnesses or to reweigh the evidence, as per State v. Robinson, 2010-0885, p. 7 (La.App. 4 Cir. 12/21/10), 54 So.3d 1208, 1213, we do not find Mr. Ward’s identification to be unreliable. Nor do we find that the jury’s conviction to be clearly contrary to the evidence.
For the foregoing reasons, we affirm defendant’s conviction and sentence.
AFFIRMED

. The gunman's identity is being withheld as he was a juvenile at the time of the robbery. He will be referred to herein as the "gunman.”

. Mr. Ward testified that the street light directly above where he stood worked intermittently and "flickers on and off every few seconds.” However, his house had two fluorescent lights "which provides much of the illumination of the area in front of [his] house.” He responded "yes” when asked whether it was "clear enough for [him] to see the faces of those two individuals.”

. The substance of the 911 call is at issue in this matter and will be addressed more fully below.

. Mr. Ward is an artist, having over eight years of academic art training.